[L. A. No. 52.    Department Two.—March 24, 1896.]

SAN DIEGO, OLD TOWN, AND PACIFIC BEACH R. R. CO., RESPONDENT, v. PACIFIC BEACH CO., APPELLANT.

CORPORATIONS—COMMON DIRECTORS—VALIDITY OF CONTRACT.—The mere fact that two contracting corporations have common directors, does not render the contract between the corporations invalid, or incapable of ratification, where there is no actual fraud alleged or found, and where the contract is within the chartered powers of both corporations.

ID.—FIDUCIARY CAPACITY—INAPPLICABLE RULE—PRESUMPTION.—The directors who are common to both incorporations are not within the rule that who acts in a fiduciary capacity cannot deal with himself in his individual capacity, but they owe the same fidelity to both corporations, and there is no presumption that they will deal unfairly with either of them.

ID.—CONTRACT BETWEEN RAILROAD AND REAL ESTATE COMPANY—RATIFICATION BY ACQUIESCENCE.—A contract between a railroad company and a real estate company having common directors, by which the real estate company agreed to pay certain promissory notes, in consideration that the railroad company would operate its road as agreed in the contract for the period of two years, is ratified by acquiescence of the real estate company, where there was no attempt or intimation of its intention to avoid the contract until long after the time mentioned in the contract had expired, and the railroad company had fully performed the contract upon its part, and could not be put in *statu quo*, and the real estate company had paid the interest upon its notes, and the principal of prior notes, until after the railroad company had fully performed its contract, and it cannot thereafter defend payment of the last note due, upon the ground that the contract was made by common directors of the two corporations.

ID.—REPUDIATION OF BURDENS—ENJOYMENT OF BENEFITS.—A party cannot repudiate the burdens of a contract, while enjoying its benefits.

ID.—EXPRESS RATIFICATION BY MAJORITY OF STOCKHOLDERS.—The majority of stockholders of a corporation, having power to authorize a contract, have power to ratify it, and an express ratification thereof by them binds the corporation.

ID.—GOVERNMENT BY MAJORITY—CONSENT OF STOCKHOLDERS.—The rule of stockholders' meetings is that the majority governs; and every stockholder contracts that such shall be the rule.

ID.—KNOWLEDGE OF FACTS.—A ratification of a contract entered into by the directors of a corporation, by a majority of its stockholders, cannot be objected to by the corporation upon the ground that some of the stockholders may have acted without knowledge of the facts, when they voted to ratify the action of the directors, where it is clear that they knew or ought to have known the nature of the contract, and the circumstances attending it, and there is no attempt to show a want of knowledge by any of the stockholders of any circumstance connected with the contract.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. GEORGE PUTERBAUGH, Judge.

The facts are stated in the opinion of the court.

*McDonald &, McDonald*, for Appellant.

The act of the board of directors of defendant, five of whom constituted the board of directors of plaintiff, in bestowing the property of defendant on plaintiff was void as against defendant and all nonconsenting stockholders, being against public policy and was incapable of ratification. (Morawetz on Private Corporations, sec. 619; *Brewer* v. *Boston Theater*, 104 Mass. 395; *Martin* v. *Zellerbach*, 38 Cal. 311; 99 Am. Dec. 365; *Kreamer* v. *Earl*, 91 Cal. 117, 118; *Visalia Gas etc. Co.* v. *Sims*, 104 Cal. 332; 43 Am. St. Rep. 105; Civ. Code, secs. 2230–34; *San Diego* v. *San Diego etc. R. R. Co.* 44 Cal., 106; *Wilbur* v. *Lynde*, 49 Cal. 290; 19 Am. Rep. 645; *Davis* v. *Rock Creek etc. Co.*, 55 Cal. 359; 36 Am. Rep. 40; *Graves* v. *Mono Lake etc. Min. Co.*, 81 Cal. 303; *San Francisco Water Co.* v. *Pattee*, 86 Cal. 629; *Finch* v. *Riverside etc. Ry. Co.*, 87 Cal. 597; *Wickersham* v. *Crittenden*, 93 Cal. 17; *Reclamation District* v. *Turner*, 104 Cal. 334; Ray on Contractual Limitations, 134; *West* v. *Camden*, 135

U. S. 507; *Thomas* v. *Brownville etc. Ry. Co.*, 2 Fed. Rep. 877; *Chicago Hansom Cab Co.* v. *Yerkes*, 141 Ill. 320; 33 Am. St. Rep. 315; *Brewer* v. *Boston Theater, supra.*) If the acts complained of could have been ratified at all, such ratification could only have been made by the unanimous vote of all the stockholders. (Morawetz on Private Corporations, sec. 529, and authorities there cited; *Brewer* v. *Boston Theater, supra; Thomas* v. *Brownville etc. Ry. Co., supra; Cumberland Coal etc. Co.* v. *Sherman*, 30 Barb. 553; *Woodroof* v. *Howes*, 88 Cal. 199, 200; *Graves* v. *Mono Lake etc. Min. Co., supra;* Cook on Stockholders, 3d ed., secs. 666, 667; 1 Am. & Eng. Ency. of Law, 430; *Pearson* v. *Concord R. R. Co.*, 62 N. H. 537; 13 Am. St. Rep. 590.) The acts relied upon to constitute a ratification must be shown by the evidence to have been done or performed by the ratifier with full knowledge of all the facts and circumstances concerning the original transaction, including the fact of its invalidity. (*Billings* v. *Morrow*, 7 Cal. 174, 175; 68 Am. Dec. 235; *Davidson* v. *Dallas*, 8 Cal. 244, 245; *Dean* v. *Bassett*, 57 Cal. 640; *Sterling* v. *Smith*, 97 Cal. 347; *Brown* v. *Rouse*, 104 Cal. 672; Morawetz on Private Corporations, secs. 249, 528, 529; *Pearson* v. *Concord R. R. Co., supra; Meeker* v. *Winthrop Iron Co.*, 17 Fed. Rep. 48; *Hazard* v. *Durant*, 11 R. I. 196; *Ashton* v. *Dashaway Assn.*, 84 Cal. 65.)

*Gibson & Titus*, for Respondent.

Contracts between corporations having one or more directors in common are merely voidable, and are capable of ratification. (3 Thompson on Corporations, sec. 4079; Cook on Stockholders, 3d ed. sec. 658; *Jesup* v. *Illinois Cent. Ry. Co.*, 43 Fed. Rep. 503; *Coe* v. *East etc. R. R. Co.*, 52 Fed. Rep. 543; *McGourkey* v. *Toledo etc. Ry. Co.*, 146 U. S. 536; *O'Connor etc. Co.* v. *Coosa etc. Co.*, 95 Ala. 614; 36 Am. Rep. 254; *Manufacturers' Sav. Bank* v. *Big Muddy Iron Co.*, 97 Mo. 38; *Alexander* v. *Williams*, 14 Mo. App. 13; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Booth* v. *Robinson*, 55 Md. 419; *Pauly* v. *Pauly,*

107 Cal. 8; 48 Am. St. Rep. 98; *Ashhurst's Appeal*, 60 Pa. St. 290; *Buell* v. *Buckingham*, 16 Iowa, 284; 85 Am. Dec. 516; *Robison* v. *McCracken*, 52 Fed. Rep. 726; *Seeley* v. *San Jose etc. Co.*, 59 Cal. 23.) A ratification by a majority of the stockholders binds the corporation. (1 Morawetz on Private Corporations, sec. 474; *Dudley* v. *High School*, 9 Bush, 578; 1 Cook on Stocks and Stockholders, sec. 607.) The action of the stockholders at the meeting of September 5, 1890, in accepting the report which showed the indebtedness to plaintiff, was an express ratification. (*Parish etc.* v. *Newburyport etc. R. R. Co.*, 141 Mass. 500; *Blen* v. *Bear River etc. Co.*, 20 Cal. 614; 81 Am. Dec. 132.) There was an implied ratification by holding and operating the road, payment of interest, and accepting treasurer's report in which the notes were carried as an outstanding obligation. (*Parish etc.* v. *Newburyport etc. R. R. Co.*, supra; *Beach* v. *Miller*, 130 Ill. 162; 17 Am. St. Rep. 298; *Duggan* v. *Pacific Boom Co.*, 6 Wash. 593; 36 Am. St. Rep. 182; *Omaha Hotel Co.* v. *Wade*, 97 U. S. 13; 1 Morawetz on Private Corporations, 2d ed., sec. 525; *Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 312; *Pittsburgh etc. Co.* v. *Keokuk etc. Co.*, 131 U. S. 371; *Louisville etc. Ry. Co.* v. *Carson*, 151 Ill. 444; 51 Ill. App. 552.)

McFARLAND, J.—This is an action upon two promissory notes made by defendant to plaintiff—one for fifteen thousand dollars, and the other for fifteen hundred dollars, the latter being for interest due upon said first-named note. Judgment went for plaintiff, from which, and from an order denying a new trial, defendant appeals.

Each of the parties is a corporation. The respondent owns and operates a railroad from a certain point in the city of San Diego to another point in said city, about ten miles distant, known as Pacific Beach; and it is the only railroad running to the latter point. The appellant is a real estate company owning a large tract of land at said Pacific Beach, and engaged in subdivid-

ing, improving, and selling said land by lots and blocks. In July, 1888, the two corporations entered into a written contract, by which respondent covenanted that, in consideration of certain sums of money to be paid it by appellant, it would operate its road between said points for two years; that during said time it would run at least four trains daily at such times as appellant should direct, the appellant to have the right to change its directions; that it would charge for passenger fare not exceeding twenty-five cents for each round trip, and sell to residents at Pacific Beach commutation tickets for a sum not exceeding four dollars and fifty cents per month; and it bound itself to appellant in the sum of thirty-five thousand dollars, and pledged all its property as security for the obligation to comply with all its covenants, and agreed that, in case of its failure to so comply for five days, the said sum of money should be paid to appellant as liquidated damages. In consideration of these covenants appellant gave its three promissory notes to respondent—one for five thousand dollars, due in six months, one for fifteen thousand dollars, due in one year, and the third for fifteen thousand dollars, due in two years. Respondent complied with all its said covenants, and operated its road in accordance with said contract during the two years. The appellant paid the two first notes in full, and paid the interest on the third (fifteen thousand dollar) note up July 10, 1891—the last installment of said interest having been paid by the fifteen hundred dollar note here sued on. Afterward appellant refused to make any further payment; and this suit is upon the second fifteen thousand dollar note, and the said fifteen hundred dollars given for interest, as aforesaid.

The main contention of appellant for a reversal arises out of these facts: The respondent had five directors, and the appellant nine; and, at the time the contract was made, four of the directors of the appellant were also directors of the respondent, and it is also claimed that before the completion of the contract a fifth

director of appellant—D. C. Reed—became a director
of respondent.    A majority of the directors of both
corporations were also stockholders in both.  . And the
contention of appellant is that, because there were
common directors of the two corporations as aforesaid,
therefore the contract was absolutely void and inca-
pable of ratification.    Respondent contends that upon
these facts the contract was, at the most, only voidable,
and that the appellant ratified it.    Appellant also con-
tends that, even though ratification were possible, there
was none.

In this case there is no *actual fraud*, either alleged or
found; and this distinguishes it from many of the cases
cited by appellant.    The contract seems to have been a
fair, open one, and carried into effect before the eyes of
all persons interested.    Neither is there any question
of *ultra vires;* and this also distinguishes the case from
cases cited by appellant.    The court found that appel-
lant's charter expressly gave it the power to make such
a contract.    (See, also, on this point *Vandall* v. *South*
*San Francisco Dock Co.*, 40 Cal. 83.)    The contention,
therefore, at this point of the case, is that the mere fact
that there were common directors, as above stated, of the
two corporations at the time of the contract makes it
absolutely void; and this contention cannot be main-
tained.

Where two corporations, through their boards of
directors, make a contract with each other, the directors
who are common to both are not within the rigid rule
of the cases which hold that one who acts in a fiduciary
capacity cannot deal with himself in his individual ca-
pacity, and that any contract thus made will be declared
void without any examination into its fairness, or the
benefits derived from it to the *cestui que trust.*    Two
corporations have the right, within the scope of their
chartered powers, to deal with each other; and this
right is certainly not destroyed or paralyzed by the
fact that some, or a majority, of the directors are com-
mon to both.    Of course, if such directors should

wrongfully and willfully use their powers to the prej- .
udice of one of the corporations, their action, if not
acquiesced in, and contested at the proper time, could
be avoided—as in any other case of actual fraud.   But
such common directors owe the same fidelity to both
corporations, and there is no presumption that they
will deal unfairly with either; therefore, their acts as
such common directors are not void. There are abun-
dance of authorities to this proposition, but it is hardly
necessary to refer to any other than that of *Pauly* v.
*Pauly*, 107 Cal. 8, 48 Am. St. Rep. 98, and the cases there
cited.

In that case the court in its opinion says: "The stum-
bling-block in this case, however, seems to have been
the double relation of agency of Collins, Dare, and
Havermale, being at the same time officers and directors
in both corporations," and quotes approvingly from
*Adams Min. Co.* v. *Senter*, 26 Mich. 73, and *Leavenworth*
v. *Chicago etc. Ry. Co.*, 134 U. S. 688, which cases strongly
declare the rule above stated.   The conclusion reached
is correctly condensed in the syllabus as follows: "The
fact that some of the directors of the bank were also
directors of the cable company, does not prevent them
from being distinct corporations who have the right to
contract with each other in their corporate capacities,
and, if the relation of the parties has not been abused, it
constitutes no bar to a recovery of moneys advanced by
the bank and used for the benefit of the cable company."
We will notice one or two other recent authorities to
the same point.   In *Coe* v. *East etc. Ry. Co.*, 52 Fed. Rep.
543, Judge Pardee says: "That the East & West Railroad
Company could lawfully contract with the Cherokee
Iron Works, although all the stockholders of the one
were also stockholders of the other, in the absence of
fraud and misrepresentation, is indisputable; nor would
the fact that the two corporations had substantially the
same directors, who were the active agents negotiating
the contract, render it void—at worst, only voidable,
but subject to ratification."   In *Jesup* v. *Illinois Cent.*

*Ry. Co.*, 43 Fed. Rep. 483, the validity of a lease between two corporations in which there were common directors was involved; and Justice Harlan held (we quote, for brevity, from the syllabus, which is correct) as follows: "The contract by which the Dubuque Company leased the Cedar Falls road would not have been void even if the majority of the directors of that company had been personally interested in the Cedar Falls Company. It would have been simply voidable at the election of the Dubuque Company, or in a proper case at the suit of its stockholders, and that election must have been exercised, or the suit brought, within such time as was reasonable, taking into consideration all the facts and circumstances of the case." In the notes to section 658 of Cook on Stocks and Stockholders, third edition, there are many cases cited on the subject. They are not all in perfect harmony; but they abundantly warrant the statement in the text that, "This class of contracts certainly are not void." (See, also, *Booth* v. *Robinson*, 55 Md. 419; *Kitchen* v. *St. Louis etc. R. R. Co.*, 69 Mo. 224.) The decisions of this court, and of other courts cited by appellant, are mostly in cases where trustees attempted to contract about the trust property directly with themselves for their individual benefit, and not cases where corporations dealt with each other through common directors; or in cases of *ultra vires* in the strict sense; or in cases where actual fraud was the ground of the alleged invalidity of the contract. For instance, *Graves* v. *Mono Lake etc. Min. Co.*, 81 Cal. 303, is greatly relied on by appellant; but, in that case, the directors of a single corporation had undertaken to vote themselves money—partly for salary prohibited by the by-laws, and to execute in the name of the corporation a note and mortgage for a large amount of money to themselves as individuals. This was an entirely different state of facts from those in the case at bar. Moreover, that case was decided upon the grounds of actual fraud and a failure to prove ratification—the court saying: "The fairness, honesty, and good faith of the transaction under con-

sideration are further impeached by the testimony,"
etc; and the court say—even in that extreme case—"It
is not intended to decide, however, that these directors
may not have recovered from the corporation the value
of money or property honestly advanced by them, and
which had been used by and for the benefit of the cor-
poration in carrying on its business, or the value of ser-
vices rendered by them outside of the duties of their
office, in a proper case and upon a proper showing."
It is true that the opinion there holds—no doubt cor-
rectly—that directors of corporations are trustees within
the meaning of sections 2228–30 of the Civil Code; but
those sections, so often invoked by appellant, are mere
statements of the fundamental principle of the law of
trusts that a trustee cannot deal with the trust property
for his own individual benefit; and that principle ob-
tained in all the jurisdictions where the decisions about
common directors hereinbefore cited were rendered.
It is unnecessary to notice each of the other cases cited
by appellant; it is sufficient to say that each case, in
some of the features above indicated, differs essentially
from the case at bar.

The contract, therefore, was not void; and assuming
that it was voidable, and might have been avoided by
the appellant at the proper time and in the proper
manner, it is clear that it was not so avoided, but that
it was ratified. In the first place, there was no attempt
to avoid it nor any intimation of such intention, until
long after the time mentioned in the contract had
expired, and respondent had performed all its covenants
therein provided; until long after appellant had received
all the benefits coming to it from respondent's perform-
ance; and until long after it had become impossible to
restore anything to respondent, or to put it, in whole or
in part, in *statu quo*. And during this time appellant
without objection paid, from time to time, the greater
part of the principal and a large part of the interest
which by the contract it had promised to pay, thus
inducing respondent to perform the whole of its part

of the contract in confidence that appellant would do the same. This, we think, under the circumstances of this case, constitutes ratification by acquiescence; for the rule is that a party cannot repudiate the burdens of a contract while enjoying its benefits. (*Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 312.) There is some question as to the sufficiency of the findings on this point, although in our judgment they sufficiently state *the facts* constituting such acquiescence. The court, however, also found that at three different meetings of the stockholders of appellant, at two of which over two-thirds of the stockholders were represented, and at the other over a majority, the action of the directors in making the contract in question was ratified, approved, and confirmed; and the evidence supports this finding. At the regular annual meeting on August 29, 1888, six weeks after the making of the contract, at which more than two-thirds of the stockholders were represented, all the previous acts of the board were expressly ratified. At the regular annual meeting on August 29, 1889, at which more than two-thirds were represented, the reports of the secretary and treasurer, showing the existence of the fifteen thousand dollar note sued on, were read and approved; and all the proceedings of the preceding year were unanimously approved; and at a regular adjourned meeting on September 5, 1889, at which a majority of the stock was represented, the same thing was shown by the reports of said two officers, and the action of the board again unanimously approved. It is admitted that there was also another annual meeting of the stockholders in August, 1890, at which all former actions of the directors were approved. These acts constituted a ratification of the contract in question. (*Underhill* v. *Santa Barbara Co.*, *supra*.)

The contention of appellant that the contract could not be ratified except by the unanimous consent of *all the stockholders* cannot be maintained. That principle does not apply to acts which might have been authorized by a majority in the first instance. "The corpora-

tion may, however, ratify an unauthorized transaction of its agents; and this may be done either by the unanimous *acquiescence* of the shareholders, or by a vote of the majority, if the transaction is of such a character that the majority might have authorized it at the outset." (Morawetz on Private Corporations, 2d ed., sec. 524, and the cases there cited.) The rule is that the majority governs, and every stockholder contracts that such shall be the rule. (Civ. Code, sec. 312; 1 Morawetz on Private Corporations, sec. 474.)

There is nothing in the contention that the ratifications were made without knowledge of what they meant. In the first place, this is not an action by individual stockholders to set aside a contract made by the corporation; the point is made by the corporation itself in a defense in which it seeks to violate its own obligation, and it would be absurd to say that *it* did not know what it was doing. But, if we assume that in this action the corporation could shield itself behind the ignorance of a few of its stockholders, it is clear that the latter knew, or ought to have known, the nature of the contract and the circumstances attending it. The respondent ran its railroad through the premises of appellant upon land purchased for that purpose by the former from the latter; there was a continuous operation of the road according to the contract, and a continuous payment from time to time by appellant of large sums of money under the contract; and the relations of the two corporations were of an intimate character. And, as was said in *Blen* v. *Bear River Co.*, 20 Cal. 613, 614; 81 Am. Dec. 132: "The natural presumption is that it was fully considered, and the particulars inquired into and explained, and the idea that this was not done is certainly at variance with the usual mode of conducting business"; and, again, "a ratification supposes a knowledge of the thing ratified"; and "there is no evidence of any mistake in this case." Moreover, at the meeting of the stockholders at which the contract was first ratified, the minutes of the meeting of the board of directors of appellant

at which the contract was made were read; and they showed that Gassen, who was a director of appellant, was also director, president, and general manager of the respondent, and presented the table of trains and acted for the respondent. Furthermore, as was said in *Underhill* v. *Santa Barbara Co.*, *supra*, quoting from Morawetz: "Nor can the shareholders of a corporation avoid responsibility for the unauthorized acts of their agents by *abstaining from inquiring into the affairs* of the company, or by absenting themselves from the company's meetings, and at the same time reap the benefits of their acts in case of success." It is significant that in the case at bar there was no attempt to show a want of knowledge of any of the stockholders of any circumstance connected with the contract which is now sought to be repudiated.

With respect to the discussion by appellant of the value of the consideration for which it entered into the contract, it is sufficient to say that the wisdom, or good policy, of that contract is not a matter for decision here. The facts found show what the consideration was. In considering this case we have assumed without deciding that the contract involved was one which the appellant, if there had been no acquiescence or express ratification, might by prompt action have avoided.

The judgment and order appealed from are affirmed.

TEMPLE, J., and HENSHAW, J., concurred.