TURNER v. CALUMET & HECLA MINING CO.

1. CORPORATIONS—TRUST RELATIONS—OFFICERS AND DIRECTORS. .
    Where a number of stockholders of a corporation combine so as to control the affairs of the corporation as they deem proper they become for all practical purposes the corporate entity and assume the trust relation occupied by the corporation towards its stockholders. The corporation itself holds its property as a trust fund for the stockholders, who have a joint interest in all its property and effects; the relation between it and its members is for all practical purposes that of trustee and *cestui que trust*.

2. SAME—DUTIES—AGENCY.
    There is an inherent obligation on the part of a director that he will in no manner use his position to advance his personal interest as distinguished from the interest of the corporation.

3. SAME—VOTING TRUST—INTERCORPORATE RELATIONS.
    While a party may act in the double relation of agent for

two principals, one corporation may not acquire the control of another for the purpose of entering into favorable contracts, etc., by securing voting control of the stock by proxies and electing its own directors directors of the subordinate company, so as to work an injury to its minority stockholders.

4. Same—Directors, Board of—Injunction.

Where the Calumet & Hecla Mining Company acquired about one-third of the stock of the Osceola Mining Company and for the purpose of subordinating the affairs of the Osceola Mining Company to its interest and by securing proxies obtained sufficient votes to elect its directors as directors of the Osceola Company, and where the board appointed the manager of the Calumet & Hecla Company as the manager of the Osceola Company, and operated the company for the benefit of the Calumet & Hecla Company, and the evidence showed their purpose to be to operate the second company in the interest of the Calumet & Hecla Company, the trial court was warranted in restraining the Calumet & Hecla Company from voting for the directors of such company as directors of the Osceola Company, and in finding the control so exerted illegal.

Appeal from Ingham; Wiest, J.    Submitted January 19, 1915.    (Docket No. 10.)    Decided July 23, 1915.

Bill by Charles M. Turner against the Calumet & Hecla Mining Company and another for an injunction and other relief.    From a decree for complainant, defendants appeal.    Affirmed.

*Allen F. Rees* and *Thomas N. Perkins* (*Rees, Robinson & Petermann*, of counsel), for appellant.

*Rollin H. Person* (*Stone & Wieder*, of counsel), for appellee.

Defendants appealed from a decree of the Ingham county circuit court, in chancery, granting an injunction restraining the Calumet & Hecla Mining Company from voting at meetings of the Osceola Mining Com-

pany stockholders for directors who are directors of the Calumet & Hecla. An able and exhaustive opinion was filed by the learned circuit judge who rendered the decree, from which the following excerpts will best serve to indicate the nature of the case, result reached, and the most salient·reasons given therefor:

"Complainant as a stockholder of the Osceola Consolidated Mining Company, filed the bill herein against defendants, to relieve the Osceola Company and himself as a stockholder therein from illegal domination he charges the Calumet & Hecla Company exercises over the Osceola Company and his rights.

"Defendants deny the charges of illegal domination, and insist that whatever has been done is legal.

"The Calumet & Hecla and the Osceola are mining companies organized under the laws of this State. The Calumet & Hecla owns about one-third of the stock of the Osceola. At the annual elections of the Osceola Company for some time 'past the Calumet & Hecla has procured proxies from other stockholders, so that with its own stock it has been able to and has cast the majority vote for directors of the Osceola Company. The Calumet & Hecla has cast this majority vote for persons a majority of whom have at the same time been its own officers and directors.

"The directors so elected have chosen as executive officers for the Osceola Company the same persons holding executive offices in the Calumet & Hecla Company, and have chosen the general manager of the Calumet & Hecla Company as general manager of the Osceola. The Calumet & Hecla Company has thus acquired complete run of the Osceola Company, makes contracts with it as it wills, operates its mines under the management of its common directors, common officers, and common manager, and sells its product, keeping, however, the name of the corporation for business purposes. * * *

"At the outset this court is warned, through its regard for the rights of property vested in the Calumet & Hecla Company in its ownership of stock in the Osceola Company, to be careful not to let the decision go upon the mere dissatisfaction of a minority

stockholder with the policy and business management of the majority.

"The law of this State grants rights to all stockholders and regulates the control to be exercised over the corporate property. * * * If the intent and purpose of the law relating to corporations has been observed in the case at bar, then there exists no reason for interference at the behest of complainant, and he must be left to bear as best he can his misfortune not to be with the majority. This court has no concern with the management of the corporate affairs of the Osceola, unless such management is unlawful or fraudulent. * * *

"It is clear upon this record that the Calumet & Hecla bought stock of the Osceola Company in order to prolong its own profitable business existence, to provide a profitable and continuing employment for its extensive and valuable mining equipment, having particular view to the time when its own ore deposits will become exhausted, and intending by way of control of the Osceola Company to compel that company to make use of the Calumet & Hecla equipment and organization to the advantage and profit of the Calumet & Hecla. It must be admitted that the equipment and organization of the Calumet & Hecla may be made available for use by the Osceola, through contracts between the companies; but it is insisted by complainant that the purpose of the Calumet & Hecla is being carried out and accomplished through the will of the Calumet & Hecla alone.

"The same interests now defending the action of the majority stockholders attempted a consolidation of the Calumet & Hecla and the Osceola and other mining companies, and this court by preliminary injunction restrained such proposed consolidation. * * * The proposed consolidation has been abandoned, but it is complained by complainant that the Calumet & Hecla has indirectly accomplished the same advantage over the Osceola it sought to obtain in the proposed consolidation. The Calumet & Hecla Company made an unsuccessful attempt to bring the Osceola Company into a joint venture with it by way of consolidation. That effort failed, but to all intents and purposes the Osecola Company is now controlled by

187 Mich.—16.

the Calumet & Hecla. The Calumet & Hecla has assumed the exercise of a power belonging to the majority in electing its directors directors of the Osceola Company. *   *   *

"The object of the purchase [of the Osceola stock] was to acquire the voting power it would give the Calumet & Hecla in the Osceola meetings, and the power so purchased has been so used that it has culminated as was intended in the control of the Osceola and its subserviency to the Calumet & Hecla. *   *   * It must be admitted by all that the majority stockholders may not use their power to defraud, oppress, or injure the minority. This statement involves the consideration of what the majority may not rightfully do, and, in case they exceed their powers, whether the transgression operates to defraud, oppress, or injure the minority. It is true the minority must bow to the will of the majority, so long as the majority keep within the law, and it is equally true that the majority may not be a law unto themselves. *   *   *

"That the purpose of the Calumet & Hecla, in purchasing stock of the Osceola, was to circumvent separate and independent management of the Osceola, is manifest. The purpose as declared by the officers of the Calumet & Hecla leaves no question upon the purpose of the purchase. But it is said that the means used, that is, the purchase of the stock, was lawful, because permitted by the laws of the State. So we have a lawful purchase of stock, incited by the desire and employed as a means of working a domination by one corporation over another, and for the declared purpose of advantage to the purchaser. *   *   * The evidence shows a successful effort upon the part of the Calumet & Hecla to obtain control of the management of the Osceola Company for purposes inimical to the Osceola. *   *   * The Osceola has now no life, no plans, no management, no policy, no officers executive in nature, and no future, except as willed by the Calumet & Hecla. The Osceola Company was at one time a competing company with the Calumet & Hecla, but it is such no longer; its independence has been destroyed; its existence has become one of name only, and all of its corporate functions have been assimilated by the Calumet & Hecla, to be handled at will through

the Calumet & Hecla directors seated upon the Osceola directory. It is true that the corporate name of the Osceola is maintained, and ostensibly its functions and its property remain to that corporation, but in reality it is made to serve the ends of the Calumet & Hecla to a point only short of amalgamation.    *    *    *

"What justification can be advanced for the seating of the Calumet & Hecla directors and officials in control of the Osceola and vesting them with power to manage the Osceola Company as the Calumet & Hecla wills? The justification given is that the Calumet & Hecla has purchased stock of the Osceola Company, and through its voting power, so acquired and aided by willing stockholders of the Osceola Company, has risen to the control of that company. This, then, brings us to the position contended for by defendants, that if the Calumet & Hecla wants to control the Osceola Company, and can compass such control, then such control is legal, and its motives and intentions are beyond the impeachment of minority stockholders. *    *    *

"The fact that the Calumet & Hecla does not hold a majority of the stock of the Osceola Company is of no significance. The significant thing is that the holding it has and its use of the same has given it control of the Osceola. The result would be the same if the Calumet & Hecla held less stock and could induce other stockholders to join with it in voting to surrender the corporation and its destiny, through its control and management, into the hands of the Calumet & Hecla. Some rights of stockholders are inviolable and beyond the mere will of the majority, and come to the stockholders by law and not through the grace of their fellow stockholders, and, so coming, they abide beyond the will of any majority.

"'When a number of stockholders combine, to constitute themselves a majority, in order to control the corporation as they see fit, they become, for all practical purposes, the corporation itself, and assume the trust relation occupied by the corporation towards its stockholders. Although stockholders are not partners, nor strictly tenants in common, they are the beneficial joint owners of the corporate property, having an interest and power of legal control in exact proportion to their respective amounts of stock. The corporation itself holds its property as

a trust fund for the stockholders, who have a joint interest in all its property and effects, and the relation between it and its several members is, for all practical purposes, that of trustee and *cestui que trust.*' Reid on Corporate Finance, § 214.

"The distinction between the Calumet & Hecla ownership of stock, and its rights and obligations as a stockholder, and its control of the Osceola Company through its directors and officers, must be kept in mind. There was a radical change in its relation to the Osceola Company the moment it succeeded in having the Calumet & Hecla directors made directors of the Osceola. As a stockholder it had a right to vote for a particular policy of management, but as director it became subject to another rule than that of self-interest.

"A director is a trustee (as defined later on) for the entire body of stockholders, and both good morals and good law imperatively demand that he shall manage all the business affairs of the company coming before him, with the sole view to promote the common interest, and not his personal interest, and he cannot directly or indirectly use his position so as to derive any personal profit or advantage not common to all his co-shareholders. By assuming the office he undertakes to give his best judgment in the interests of the corporation in all matters in which he acts for it, untrammeled by any hostile interests in himself or others. There is an inherent obligation on his part that he will in no manner use his position to advance his own interest as an individual as distinguished from that of the corporation. *Bird Coal, etc., Co.* v. *Humes,* 157 Pa. 278 [27 Atl. 750, 37 Am. St. Rep. 727]. * * *

"It takes no great degree of perception to gather that the purchase of the stock would avail nothing toward furthering the aims of the Calumet & Hecla, unless the matter was pressed to the point of control, and such control has been obtained, and the Calumet & Hecla directors dictate the policy and manage the Osceola with as much authority and with the same agencies as the Calumet & Hecla. The end sought has been accomplished, and the Calumet & Hecla directors of the Osceola are such for the advantage and benefit they can make that company render the Calumet &

Hecla. The welfare and ultimate destiny of the Calumet & Hecla, and not that of the Osceola, demanded that the Calumet & Hecla get control of the Osceola and make it a 'feeder' to the Calumet & Hecla, and to that end control has been acquired through the common directors and officers. * * *

"Complainant insists that directors are in the eye of the law trustees, while defendants insist that they are not. * * * I am satisfied that directors are agents of a grade nearly approaching that of trustees, and that the duties and obligations resting upon them are, in the main, such, so far as fidelity and good faith are concerned, as are exacted of trustees. * * * The best authority is to the effect that directors, while not trustees, have assumed a relation best to be tested and governed by the rules of conduct exacted of trustees, and this has led many courts to style them trustees. But the characterizing of directors by a mere term is of small moment. In the matter of corporate policy, representative duties, fiduciary relations, and general obligation, directors are to be held to the same rules of good faith and fairness toward their corporation as trustees are held in the management of a trust. * * *

"The Calumet & Hecla is an old and very successful mining company, and it has perfected an organization and equipment enabling it to carry on all branches of the mining industry, and the time will come when this organization and equipment, by reason of the limit to the paying rock of the company, will become practically worthless, unless it can be brought about that other companies must make use of the same. To provide against the time when its own demands will not furnish work for its organization and equipment, as well as for present profitable employment, the Calumet & Hecla has schemed and brought about the election of its directors to the directory of the Osceola, in order that such directory, seated at the Osceola table of authority, might so manage the Osceola as to make contracts between that company and the Calumet & Hecla, for the management of the Osceola and the employment of the organization and equipment of the Calumet & Hecla.

"Such directors have a double commission—one

open, and the other secret; one of real agency, and the other in appearance only; one emanating from their first master, the Calumet & Hecla, and the other coming from the same power, but worked out through its stockholding in the Osceola Company.

"It has been held in this State that a party may act in the double relation of agent for two principals. *Michigan Slate Co.* v. *Railroad Co.,* 101 Mich. 14, 28 [59 N. W. 646]. * * * But no case in this State holds that an agency with power to act for two corporations may arise out of the schemes practiced by the Calumet & Hecla Company—to get its agents made agents of the Osceola Company for the express purpose of thereby being able to make contracts between the two corporations at all times as willed by the Calumet & Hecla. * * * There is a vast difference between an agent selected by two principals capable of and actually acting, and of directors selected through the voting power of stock of one corporation in another, and selected for the purpose of so managing the helpless corporation that such contracts may be made with it as will so encompass it that it must manage to prolong the business life and promote the financial welfare of the selecting company. In such case there is in the eye of the law but one principal or master, and the colorable act of having the directors elected by the helpless corporation fools no one, because it does not cover up the purpose of having them elected.

"The weight of authority in this country is to the effect that two corporations may have the same directors, who are active agents transacting the business between the corporations, and such dealings are not void, in the absence of fraud or bad faith. Cases may be found, however, pro and con upon this question, and are collated in the footnote to *San Diego, etc., R. Co.* v. *Pacific Beach Co.* [112 Cal. 53, 44 Pac. 333], 33 L. R. A. 788.

"'* * * But such directors may not be the confessed agents for the advantage of one corporation, and act for the other for the purpose of making possible contracts wanted for the advantage of the corporation sending them there. Contracts between corporations having common directors are to be closely

scrutinized by the courts when brought in question in a suit, for no court can presume the elements of fairness to exist when the badge of adverse and conflicting interest affirmatively appears.

"The case at bar cannot be disposed of upon the abstract determination of law that two corporations may have common directors and make legitimate contracts with each other. If the courts look with suspicion upon contracts made between corporations having common directors, it does not follow that the inquiry is to be limited to determining whether a particular contract shall stand or be declared void. If the suit is one to relieve the dominated corporation from the grip fastened by the contract, the court may well stop at the point where the wrong has been righted; but in a suit by a stockholder to save his rights as such from the designs of others, the court, when the evil is apparent, should not await the consummation of the threatened wrong, or only untie the victim that the bond may be put on anew. If the whole wrong has been accomplished, then there is small occasion for the court of equity to intervene, and the party complaining may well be remitted to his action at law; but where the wrong is intended to be a continuing one, then the court of equity should enjoin its continuance.

"The complainant is not bound to wait until the Osceola Company has sustained substantial damage and then bring suit for compensation. * * * When the control has been acquired, solely in order to benefit the dominant corporation, and such intent and purpose has been made manifest, then the law will not permit the dominant corporation to propose, and accept, make, and carry out, contracts between such corporations, and will prevent by injunction the further election of the directors of the dominant corporation to preside over the destinies of the servient corporation. * * * A trustee or agent will never be permitted to deliberately place himself in a position where self-interest and duty to another will conflict, and then be heard to say: 'that fraud is under no circumstances to be presumed; the presumption is that all men are honest.' * * * For, when he assumes a position demanding and requiring good faith and fair-

ness, and comes to it with the intention of using the position to aid another that sent him there, he has invited assault; and his self-interest, and that of his first master, render it no hardship to let him establish the difficult fact that he has been true to his trust. And this is what the court meant in the case of *Clute* v. *Barron*, 2 Mich. 192, when it said:

" 'The subject of constructive frauds, which arises from some confidential or fiduciary relation between parties, is discussed with much learning and ability by Mr. Story in his commentaries on equity. * * * "That whenever confidence is reposed, and one party has it in his power, in a secret manner, for his own advantage, to sacrifice those interests which he is bound to protect, he will not be permitted to hold any such advantage." The doctrine thus broadly stated will necessarily include not only trustees, but all others occupying a like relation.'

"For the court to say to complainant to prove the fraud charged would result in this case, and in all others of like character, in permitting the relation to continue, because the proof is within the hands of defendants.

"When it appears that a director is in fact interested adversely to one corporation, in a case where he insists on acting for both, then his acts stand no higher in court than the purpose for which he acted.   *   *   * The courts look upon contracts made by common directors with suspicion, and when it appears that the common directors are so only in name, and in fact have been made such directors of one corporation, by another corporation, to represent both, in order that through them one corporation and its property can be made a 'feeder' to the other, and thereby prolong its profitable business existence, the presumption of fairness gives way to the presumption that what was intended to be done has been done, and the whole scheme comes under the condemnation of the law, and should be declared an unlawful usurpation by the offending corporation.   *   *   *

"As a stockholder, complainant has a right to insist that the corporation shall not be taken over by another corporation, except in a manner authorized by law. It is admitted by counsel for the Calumet & Hecla that existing contracts, consummated by the

common directors, are voidable at the election of the Osceola Company; but it is insisted that this affords no proof upon which any stockholder therein may be heard. That the Osceola Company, while under its present domination, cannot and will not ask to have the contracts between it and the Calumet & Hecla declared void, is apparent, and is saying no more than that it is not to be expected that the Calumet & Hecla control of the Osceola will ask to have contracts the Calumet & Hecla have been to such pains to bring into being set aside. *    *    *

"The admissions made by the officers of the Calumet & Hecla of the purpose of the company in acquiring the stock of the Osceola Company, supplemented by the acts of the Calumet & Hecla Company and its neglect to show fairness and good faith in the making of the contracts between the two corporations, compel this court to find for the complainant.

"It is not true that, because directors are seated, there must follow the presumption of fairness, regardless of how and for what confessed purpose they were seated. *    *    * The Calumet & Hecla directors were elected directors of the Osceola Company by the Calumet & Hecla Company, and it makes no difference that the Calumet & Hecla Company had not stock enough in its own name to accomplish its purpose, for it appears that its purpose has been brought about by its voting power in the Osceola, aided by proxies it voted along with its own holdings of stock. *    *    * The mischief the law attempts to guard against is patent, and so opposed to all principles of equity that the court is bound to prevent its continuance.

"But it is said that to prevent it by forbidding the stockholders to vote for designated individuals, or a class, is to take away a right given by the law, and deprive the stockholders of the lawful right of franchise and of property. It does no such thing. It is based upon an abuse of the right of franchise, and is to prevent further abuse along the same line. The question here presented is that of whether the directors or agents of the Calumet & Hecla shall be permitted to continue as the directors of the Osceola. *    *    * If the court has no power to enjoin, then the complainant must be remitted to his action at law.

" 'The United States Supreme Court long since accepted as settled law, both in England and the United States, that courts of equity in both countries have a jurisdiction over corporations, at the instance of one or more of the stockholders, to apply preventive remedies by injunction, to restrain those who administer them from doing acts * * * lessening * * * the value of their shares, * * * if the acts intended to be done create whatever the law denominated a breach of trust.' Reid on Corporate Finance, § 207.

"Complainant asks that the Calumet & Hecla be restrained from voting in the Osceola meeting for directors who are directors of the Calumet & Hecla. The relief is granted.

"Complainant also asks that the Calumet & Hecla be restrained from voting its stock at all in the Osceola meetings. This cannot be granted. The statute permits the Calumet & Hecla to own the stock of the Osceola Company, and in so holding the stock the Calumet & Hecla has all the rights of a stockholder, and this court has neither the power nor the disposition to confiscate such property right.

"I have considered the question of whether the Calumet & Hecla should be restrained from voting for persons for directors of the Osceola who are stockholders merely in the Calumet & Hecla, and have reached a conclusion that to do so would be going somewhat beyond the necessities of the case. I recognize the possibilities of continuing the Calumet & Hecla authority over the Osceola in case common stockholders are made directors of the Osceola; but if this happens, and the situation as presented upon this record continues, the remedy must come after the event and not before. The complainant as a stockholder of the Osceola Company has a right to have the Osceola corporation proceed under its own corporate powers and management within the intent and purposes of a corporation competing with and free from the unlawful domination of the Calumet & Hecla.

"The complainant is granted a decree as above set forth, with his costs to be taxed."

STEERE, J. (*after stating the facts*). Since this suit was appealed, a companion case, entitled *Hyams* v.

*Mining Co.*, involving substantially the same evidence, issues, and purpose, has been decided by the United States Circuit Court of Appeals. The opinion rendered in that case (221 Fed. 529, 137 C. C. A. 239) reviews practically the same controlling evidence and questions of law presented by this record, with similar conclusions and like decree as reached and rendered by the trial court in this case. After consulting the authorities cited and a careful examination and comparison of the records and opinions in the two cases, we find no occasion to disturb the decree rendered by the Ingham county circuit court, in chancery.

The same is hereby affirmed, with costs.

BROOKE, C. J., and KUHN, BIRD, and MOORE, JJ., concurred. STONE and OSTRANDER, JJ., did not sit.

The late Justice MCALVAY took no part in this decision.