[S. F. No. 6741.  In Bank.—December 23, 1915.]

DANIEL MANNING, Appellant, v. APP CONSOLIDATED GOLD MINING COMPANY (a Corporation) et al., Respondents.

FRAUDULENT CONVEYANCE—TRANSFER BY CORPORATION OF ENTIRE ASSETS —EVIDENCE SUSTAINS FINDINGS AGAINST FRAUD.—In an action by a judgment creditor of a corporation to avoid certain conveyances and transactions whereby the judgment debtor had transferred its entire assets to another corporation in consideration of shares of stock in the latter, on the ground that the transfer was made for the purpose of defrauding the creditors of the debtor, it is held that, under the evidence, the trial court was given the duty of determining the question of alleged fraud as a matter of fact and not as a matter of law arising from the undisputed or admitted facts; that there is a substantial basis for the court's conclusion that the transaction attacked by plaintiff was not fraudulent and void; that the findings in this regard are supported by the evidence; and that, therefore, the judgment cannot be disturbed.

ID.—ASSUMPTION OF DEBTS OF GRANTOR BY GRANTEE—VALUABLE CONSIDERATION.—A conveyance by a corporation of its entire assets in consideration of the assumption by the grantee of the indebtedness of the grantor is for a valuable consideration, and is not fraudulent as to creditors of the grantor within the purview of section 3442 of the Civil Code.

ID.—TRANSFER FOR PURPOSE OF CONDUCTING LITIGATION IN FEDERAL COURT.—The purpose of a domestic corporation in transferring its property to a corporation organized under the laws of another state, in order that certain threatened litigation might be conducted in the federal rather than in the state courts, is neither essentially fraudulent nor improper.

ID.—TRANSFER BETWEEN CORPORATIONS HAVING COMMON STOCKHOLDERS AND DIRECTORS.—The fact that virtually all of the stock in both corporations was owned by the same persons did not render the transfer fraudulent.  Nor was the fact that the same persons, or most of them, were directors in both corporations conclusive as to the bad faith of the transfer.  Such dealings between corporations are not void, but voidable only, and may be ratified by either party by conduct having that legal effect.

APPEAL from a judgment of the Superior Court of Fresno County.  H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Paul C. Morf, William M. Cannon, and F. J. Solinsky, for Appellant.

F. E. Cook, Goodfellow, Eells, Moore & Orrick, and Samuel M. Shortridge, for Respondents.

MELVIN, J.—Appeal by plaintiff from the judgment.

Plaintiff sued as a judgment creditor of the App Consolidated Gold Mining Company (which hereafter we shall designate as the "App Company"). The complaint charged that certain conveyances and other transactions upon the part of the App Company and the other defendants were fraudulent, and that the property and assets of that corporation were transferred for the purpose of preventing him from securing anything in satisfaction of his judgment. We shall abbreviate the names of the other corporate defendants, The Rawhide Gold Mining Company and the Central Land and Trust Company to "Rawhide Company" and "Trust Company," respectively.

According to the allegations of the complaint, the corporate defendants Rawhide and App companies were engaged in gold mining in Tuolumne County. William A. Nevills owned a majority of the stock of each corporation.

In February, 1902, the plaintiff, who was employed in a mine belonging to the App Company, was seriously injured by a falling timber. In April, 1902, the said corporation conveyed all of the property of which it was then the owner to the Rawhide Company, in consideration of the issuance to it of $14,975 of the stock of the latter company, that consideration being named in the instruments of conveyance.

In the month of May, 1902, plaintiff sued the App Company for damages on account of the injuries received in its mine and in November of that year obtained judgment for five thousand dollars. The order of court denying a new trial in that case was reversed by this court in March, 1906.

On November 12, 1906, William A. Nevills (so it is alleged), owning a majority of the shares of stock of the App and the Rawhide companies and being indebted to the Trust Company for one hundred thousand dollars loaned and advanced to him personally for his own use, procured the execution by the Rawhide Company of a promissory note in the sum of one hundred thousand dollars. On the same

day, it is alleged, the Rawhide Company executed a trust deed conveying to F. H. Short and J. P. Bernhard in trust, as security for the payment of the said note, all of the mining property described in the complaint and other valuable property belonging to Nevills or to him and his wife, Delia F. Nevills, who is also a defendant in this action.

In February, 1910, Manning's action against the App Company was again tried, resulting in a judgment in his favor for seventeen thousand five hundred dollars. An appeal was taken by the defendant, but it was not perfected, and the judgment became final in July, 1912.

It is also averred in the complaint that prior to the commencement of this action proceedings were pending in Tuolumne County to foreclose under the deed of trust, the amount then due on the promissory note being more than one hundred and twenty thousand dollars.

It is alleged that the property conveyed by the App Company to the Rawhide Company was worth five hundred thousand dollars, and that after the said conveyance no assets of any sort out of which Manning could satisfy his judgment remained in the possession of the App Company.

The complaint also contains averments to the effect that Nevills dominated both mining corporations and that all of the transactions were done according to his wishes and commands; that he owned 146,080 of the one hundred and fifty thousand shares of the stock in the App Company and 14,980 of the fifteen thousand shares of the Rawhide; that the deed of conveyance from the former to the latter was without consideration, and that Nevills caused said conveyance to be made for the purpose of defrauding the creditors of the App Company, particularly the plaintiff. Upon information and belief it is pleaded that the indebtedness evidenced by the promissory note to the Trust Company has been paid by the proceeds from the pledged property; that Nevills and the officers of the Trust Company have conspired to pretend that no portion of the principal sum of the note has been paid, and to cause the sale of said property under the terms of the deed of trust; that said property is to be purchased for them at such sales and to be conveyed at some future time to Nevills, and that such course has been and is to be pursued for the purpose of defrauding plaintiff and other judgment creditors; that in pursuance of said con-

spiracy the trustees have been notified of the alleged default in payment of the note, and have been directed to sell the property in accordance with the terms of the trust deed; and that the trustees have prepared to foreclose, and unless they be restrained will sell the property, thereby impairing plaintiff's lien. The prayer is for judgment for the amount of plaintiff's claim, and besides, the plaintiff asks for an accounting by the Trust Company for all moneys received by it from the Rawhide Company, from Nevills, and from the operation of the mining property described in the conveyances. Plaintiff also prays for restraining orders which will prevent further activities by any of the defendants looking to the disposition of the property, and especially does he ask that the trustees be restrained from any further proceedings under the deed of trust.

The substantial averments of the complaint are denied by the defendants in their answer. They deny any conspiracy to defraud creditors either in the transactions between the App and the Rawhide companies resulting in the purchase of the property of one by the other, and allege that the deed of trust was made in good faith and received by the trust company without any knowledge of any matters alleged in the complaint. The payment of the indebtedness evidenced by the promissory note is also denied, and they plead a judgment of the superior court given on July 8, 1912, whereby it was found that the Rawhide Company was indebted to the trust company in a sum in excess of one hundred and twenty thousand dollars, and while admitting that the proceeds of the pledged properties have been applied to the indebtedness evidenced by the note, they assert that no accounting is necessary to determine the balance due, for the reason that such accounting has been ordered by the court in another action and has been accomplished.

The findings are to the effect that all of the transactions denounced in the complaint as fraudulent were in good faith, and that the trust company had no knowledge or notice of the alleged fraudulent practices in the dealings between the App and the Rawhide companies. The court also found that the trust company knew of no claim or demand of the plaintiff against the App Company or of the suit for damages.

An attack is made by appellant upon the findings on the theory that the evidence does not support them. The plain-

tiff insists, moreover, that the evidence shows without contradiction a state of facts leading, as matter of law, to the conclusions for which he contends. These propositions are, in brief, (1) that the conveyance by the App Company to the Rawhide Company was made without consideration with intent to hinder, delay, and defraud creditors of the App Company; (2) that the deed of trust was executed as security for the personal debt of Nevills, and in pursuance of his intention to create a large indebtedness against the property so fraudulently transferred, ostensibly in the name of the Rawhide Company, with intent to hinder, delay, and defraud the plaintiff; (3) that the trust company at all times had full knowledge of all of the alleged frauds; and (4) that the indebtedness evidenced by the promissory note has been paid, but that Nevills and the trust company fraudulently conspired to pretend that no such payment had been made. Appellant seems to pin his faith upon the first and third propositions; therefore we will consider, (1) whether or not there is any evidence to sustain the finding of the superior court that the conveyance of the App Company to the Rawhide Company was made for a consideration and without intent to hinder, delay, or defraud plaintiff; and (2) if it be determined that the finding was unsupported and that said conveyance was made with the intent alleged, whether or not the Trust Company had knowledge of the fraud when the deed of trust was executed. If neither of these problems must be solved in favor of defendants, the judgment must be affirmed.

Respondents insist that the question of fraudulent intent is one of fact to be determined by the trial court and not one of law arising from the proven or admitted facts. It is the contention of respondents that there is no presumption of fraud arising out of the transfer of all of the property of the App Company to the Rawhide Company, because there was not lacking a valuable consideration and because the transfer was not made in contemplation of insolvency. (Civ. Code, sec. 3442.) Mr. Ricketts, who was attorney for the App Company at the time of the said transfer, testified that the corporation did receive 14,975 shares of the Rawhide stock. Mr. Lang's testimony was to the same effect. It is true that the 14,975 shares were subject to a prior pledge to J. S. Doe, who held as collateral security for a loan to

Nevills substantially all of the stock of the original issue of the Rawhide Company. The amount of the stock was reduced in accordance with the laws of West Virginia, in which state the Rawhide Company was chartered. It is stoutly asserted by appellant that there was obvious fraud in thus reducing the number of shares of capital stock while the original issue was outstanding and in Mr. Doe's hands, and that in any event the new issue was of no value because all of its equivalent was held by the pledgee. Respondents are of the opinion that the facts shown would only subject the new shares of the Rawhide to Mr. Doe's prior lien, and as there were, according to the testimony of Mrs. Nevills, about three millions of dollars' worth of securities in Mr. Doe's hands to protect a debt of something like two hundred thousand dollars, it could not be said that the shares transferred by the Rawhide to the App were without value because, under the doctrine of marshaling of securities, resort must first be had to other personalty held by the pledgee before he would be justified in applying the Rawhide stock to the payment of the debt of Nevills. There is much force in this position, but we are not compelled to consider the legality of the change in the amount of capital stock nor the value of the new stock when issued to support the finding that there was a valuable consideration for the transfer of the App Company's property. The Rawhide Company assumed the current indebtedness of the App Company in consideration of the deed, and debts were paid by it. The promise of a grantee to pay a grantor's indebtedness is a valuable consideration. (*Saunderson* v. *Broadwell,* 82 Cal. 133, [23 Pac. 36]; *Gladwin* v. *Garrison,* 13 Cal. 332; *Carty* v. *Connolly,* 91 Cal. 19, [27 Pac. 599]; *Greenwalt* v. *Mueller,* 126 Cal. 639, [59 Pac. 137].) Such assumption removes the transaction from the operation of section 3442 of the Civil Code. The same principle was announced by the supreme court of Nevada in *Ivancovich* v. *Stern,* 14 Nev. 341.

Mr. Ricketts testified that long before Manning was hurt a plan was discussed for transferring the property of the App (a Californian corporation) to the Rawhide, the primary purpose being to vest the property in the West Virginian corporation in order that certain threatened litigation might be conducted in the courts of the United States rather than in those of this state. There was nothing essentially fraudu-

lent or even improper in such a purpose. Nor did the fact that Nevills was the owner of virtually all of the stock of both companies render the transaction fraudulent. Indeed, so far as Nevills was concerned, he was liable as a stockholder of either company, and was *personally* liable as a stockholder of the Californian corporation. At the time when the first judgment was given in favor of Manning, Nevills was evidently solvent, because he and his wife offered themselves and were accepted as sureties on the appeal bond. It is argued that such a course was entirely inconsistent with any idea of trying to defeat the collection of Manning's claim, and that if Nevills had sought fraudulently to prevent such collection, he would have made some apparent disposition of his individual property for the same purpose. There is force in this position, and doubtless the argument received due weight in the mind of the trial court. Nor is the fact that the directors of the App and the Rawhide companies were all or most of them holding like positions in both corporations conclusive as to the bad faith of the transaction between them. Such dealings are not void, but voidable only, and may be ratified by either party by conduct having that legal effect. (*Sausalito Bay Land Co.* v. *Sausalito Improvement Co.*, 166 Cal. 306, [136 Pac. 57].) It needs no argument to demonstrate that the stockholders of both companies by their subsequent actions ratified the transfer. For example, the Rawhide defended and compromised a suit which had been commenced in a federal court on a liability which was originally that of the App Company.

Doubtless it was an irregularity as against Doe for the Rawhide Company to issue the certificate for the reduced stock without naming Doe therein as pledgee. (*Spreckels* v. *Nevada Bank*, 113 Cal. 274, [54 Am. St. Rep. 348, 33 L. R. A. 459, 45 Pac. 329].) Notwithstanding the pledge to Doe, Nevills continued to own the stock, and the transfer of it to Doe not having been entered on the corporation's books, was good only as between the parties. (Civ. Code, sec. 324.) Doe was paid eventually, and the 14,975 shares of stock transferred by Nevills to the App Company was in essence the same stock which he had pledged to Doe. Nor does fraud inhere in the fact that Nevills furnished the consideration which passed between the corporations. He was virtually the sole stockholder of each company. If he transferred

shares in the Rawhide, which he personally owned, to the App (of which he was the holder of substantially all of the stock), it would not alter his financial interest.

We conclude, therefore, that to the trial court was given the duty of determining the question of alleged fraud as a matter of fact and not as a matter of law arising from the undisputed or admitted facts; that there is a substantial basis for the court's conclusion that the transaction attacked by plaintiff was not fraudulent and void; that the findings in this regard are supported by evidence; and that we cannot, therefore, disturb the judgment.

The conclusion which we have reached makes it unnecessary to examine the other contentions of appellant relating to the transactions between the Trust Company, the Rawhide Company, Nevills, his wife, and others, because there is no alleged fraud connected with that branch of the case which is not charged as having its origin in the asserted original bad faith and alleged sinister practice by which the properties of the App Company were transferred to the Rawhide.

From the foregoing it follows that the judgment must be affirmed, and it is so ordered.

Lorigan, J., Henshaw, J., and Sloss, J., concurred.

Rehearing denied.