[Civ. No. 3976.   Third Appellate District.—January 30, 1930.]

BELLE McCORD ROBERTS et al., Appellants, v. W. F. PRISK et al., Respondents.

W. A. Alderson for Appellants.

Knight & Goddard for Respondents.

PLUMMER, J.—This action was begun by the plaintiffs against the defendants to recover of and from the four individual defendants mentioned the sum of $75,000, and directing that such sum be repaid to the defendant Press Telegram Publishing Company, a corporation; that an accounting be had; a receiver appointed; and an injunction issued; it being alleged in the complaint that the four individual defendants mentioned had misappropriated the funds of the Press Telegram Publishing Company, a corporation, the

gist of the action being to restore to the treasury of the defendant Press Telegram Publishing Company, all the moneys alleged to have been misappropriated by the individual defendants named, the Press Telegram Publishing Company being made a defendant because it refused to join as a plaintiff in this action.

The complaint alleges the corporate existence of The Daily Telegram Company of Long Beach, the Press Telegram Publishing Company and the Press Telegram Building Company, the latter being the present name of the corporation originally known as the Long Beach Press Building Company. The board of directors of the Press Telegram Publishing Company are the defendants named in this action, together with S. S. Conklin, Oscar Conklin and the plaintiff Belle McCord Roberts. The directors of the Press Telegram Publishing Company, a corporation, are identical in personnel with the directorate of the Press Telegram Building Company. The complaint also alleges that the individual defendants named in this action constitute a majority of the board of directors of both companies. It is then further alleged in the complaint that the Press Telegram Building Company undertook to erect a large building in the city of Los Angeles, and became heavily indebted; that the individual defendants in this action being in control of said corporation, as aforesaid, and also the defendant Press Telegram Publishing Company, at divers times appropriated, used and diverted the funds and money of the Press Telegram Publishing Company to said Press Telegram Building Company, in the sum of $75,000. It is further alleged that on or about the twentieth day of December, 1926, at a meeting of the board of directors of said Press Telegram Publishing Company, the individual defendants above named then constituting a majority of the board of directors, caused to be adopted a resolution, in which resolution it was provided and declared that the said Press Telegram Publishing Company should purchase 650 shares of the capital stock of the Press Telegram Building Company. It further appears in the complaint that the board of directors of the defendant Press Telegram Publishing Company have purchased, all told, 658 shares of the capital stock of the Press Telegram Building Company.

Stripped of its legal verbiage, the record shows that the directors of the Press Telegram Publishing Company and Press Telegram Building Company are identical; that the Press Telegram Building Company has been erecting a building to be occupied by the Press Telegram Publishing Company. Some time prior to the beginning of the erection of the building referred to, The Daily Telegram Company of Long Beach and the Press Publishing Company of Long Beach, respectively publishing newspapers, were consolidated, and thereafter only one paper was published and known as the ''Press Telegram,'' by the Press Telegram Publishing Company. In the consolidation of the companies it appears that The Daily Telegram Company of Long Beach was given thirty-two per cent of the capital stock of the Press Telegram Building Company and thirty-two per cent of the Press Telegram Publishing Company. The Long Beach Press Publishing Company, under the consolidation, was given sixty-eight per cent of the capital stock of the Press Telegram Publishing Company, and was given sixty-eight per cent of the capital stock of the Press Building Company. The capital stock is still owned in the same proportions by the same companies. In the construction of the Press Telegram Building the Press Telegram Publishing Company advanced money from time to time to the Building Company in the aggregate of $80,800, and had received from the Building Company at the date of the trial, 808 shares of its capital stock. The records introduced upon the trial show the following resolutions adopted by the Press Publishing Company on December 20, 1926: ''Be it Resolved that the Press Telegram Publishing Company accept from the Press Telegram Building Company, in payment of $15,000.00 advanced during the year 1926, 150 shares of the capital stock of the Press Telegram Building Company, at par. Be it further Resolved that during the year 1927 that this Corporation purchase at par, as much of the capital stock of the Press Telegram Building Company, not to exceed 500 shares, as the president may deem it advisable, and that such purchase be made from time to time from the profits of the Press Telegram Publishing Company on hand. Be it further Resolved that the actions of this Corporation in purchasing such capital stock of said Press Telegram Building Company during the year

1926, be, and the same is hereby approved and ratified as the acts and deeds of this Corporation." The action before us was begun in January, 1928. Summarized, the complaint alleges that the individual defendants used and diverted funds and money belonging to, and in the treasury of the Press Telegram Publishing Company; that said acts were fraudulent and a breach of trust of said individuals; that said acts were done by said individual defendants for their own profit, benefit and gain; that the Press Telegram Building Company is insolvent and its shares of stock worthless. The record further shows that $75,000 was borrowed by the Press Telegram Publishing Company from the Pacific Southwest Trust and Savings Bank of Los Angeles, by resolution introduced by the plaintiffs in this action and voted for by all of the directors of the Press Telegram Publishing Company. While there is no action of the directors of the Press Telegram Publishing Company called to our attention relative to the purpose for which this money was to be used, it does appear that the directors all understood that it was to be used for the purpose of advancing money to the Press Telegram Publishing Company, and that the capital stock of the Publishing Company to which we have referred should be accepted for the money so advanced. It may be further stated to clarify whatever confusion might result from the use of the moneys herein, that the stockholders of the Press Telegram Publishing Company were the seven directors thereof, and that the stockholders of the Building Company were the seven directors thereof. Thus, while the two corporations were distinct entities, the directors and stockholders were the same in both corporations. So far as we have been able to trace the money set forth in the transcript originally borrowed by the Press Telegram Publishing Company, or that may have come from the profits of the Press Telegram Publishing Company and advanced to the Building Company, all went toward the payment of the expenses incurred in erecting the building occupied by the Press Telegram Publishing Company, and as presented by the record, the Press Telegram Building Company owns the building, and the Press Telegram Publishing Company and the directors thereof own all of the capital stock of the Building Company. The money referred to, although charged in the complaint to have been

appropriated to the uses and purposes of the individual defendants, thus appears to have gone into and paid for properties owned by all the parties concerned. The record shows that the stock of the Building Company has become quite valuable and is paying sufficient to justify a dividend in the sum of seven per cent on the investment, which controverts the allegation of insolvency. Upon the conclusion of plaintiff's testimony the defendants interposed a motion for nonsuit, which was granted and judgment entered thereon, from which judgment the plaintiffs appeal.

No testimony whatever was introduced showing any fraudulent acts on the part of the individual defendants named in this action. The only question presented upon the record, in view of the want of testimony showing fraud or that the defendants individually profited to the disadvantage of the plaintiffs, is the want of legal authority to purchase stock in the Press Telegram Building Company by the Press Telegram Publishing Company. ▆ While some technical objection has been made to the motion for nonsuit, we think it sufficiently shows that there was presented to the court for its consideration, the want of testimony to show any breach of trust on the part of the defendants, or any fraudulent misappropriation of money by them, or any fraudulent diversion of money from one corporation to the other for the gain and profit of the individual defendants named in this action. The argument that counsel for the respondents used the word "proof" instead of the word "evidence" when making his motion for nonsuit on the ground that none of the charges had been established, seems to us too technical to necessitate further consideration than the citation of subdivision 5 of section 581 of the Code of Civil Procedure providing for a dismissal. It is there said: "An action may be dismissed by the court upon motion of the defendant when, upon the trial the plaintiff fails to prove a sufficient case for the jury." The action under consideration was tried before the court, but the subdivision of the section applies in such instances. ▆ Some question is also made that the purchase of the stock referred to was partly made before the board of directors had passed a resolution authorizing the purchase of the same, but if the board of directors had authority to authorize the purchase, they had power to ratify the previous purchase of the 150

shares. (See 3 Fletcher on Corporations, at p. 2151; 6 Cal. Jur., pp. 1119 and 1120.)

The appellants call our attention to the case of *Knowles* v. *Sandercock*, 107 Cal. 629 [40 Pac. 1047], where it is said: "A private corporation has no implied authority to invest in shares of another private corporation" (citing a number of authorities). And likewise calls our attention to section 9 of article XII of the state Constitution limiting the power of corporations to engage in business other than as expressly authorized by its charter. In that case the articles of incorporation of the two corporations involved were introduced in evidence and show the purposes for which the respective organizations were formed, and it is upon these articles of incorporation that the court held that the subscription of one corporation to the capital stock of the other corporation was *ultra vires* and void. As applied to the facts in that case the authorities cited by appellants appear to have fully settled the law that one corporation has no implied power to purchase the stock of another corporation, but the cases cited, however, and the principle of law there involved is not applicable to the *instant* case. The record fails to show that the articles of incorporation of any of the corporations involved in this case were introduced in evidence; therefore, the following decisions of our Supreme Court are decisive: In the case of *Evans* v. *Bailey*, 66 Cal. 112 [4 Pac. 1089], having under consideration the question of *ultra vires* of one corporation purchasing shares of the capital stock of another corporation, it is said: "A corporation is not presumed incapable of purchasing and holding shares of the stock of another. The burden of proof is upon the party who claims that the purchase and ownership of the stock was not within the scope of the powers of the corporation."

In the case of *Stockton Sav. Bank* v. *Staples*, 198 Cal. 189 [32 Pac. 936, 938], where the same principle was involved, but the property held was a tract of land, and articles of incorporation were not introduced in evidence, the court said: "Under these circumstances it must be presumed that the corporation had power to purchase and hold the land." And further: "It does not appear under what statute or for what purpose the plaintiff was incorporated, nor what business it was engaged in, nor for what purpose

the property was purchased or used." And quoting from the case of *People* v. *La Rue*, 67 Cal. 526 [8 Pac. 84], it is further stated: "If there was anything in its charter or the business in which it was engaged, or in the law under which it was organized, in any manner abridging its right to hold land, it does not appear of record. Hence, we deem the objection untenable."

And in *Kennedy* v. Savings Bank, 101 Cal. 495 [40 Am. St. Rep. 69, 35 Pac. 1039], the cases to which we have just referred were reaffirmed, and it there appearing that the articles of incorporation were not introduced in evidence, it was held that the law would not presume that the corporation did not have the power to purchase or subscribe for shares of the capital stock of another corporation. Not having introduced the articles of incorporation of the various corporations involved in this action, we cannot presume that the Press Telegram Publishing Company did not have authority to make the purchase of the capital stock of the Press Telegram Building Company.

Again, the fact that the record shows interlocking directorates is urged as a reason why the transaction should be held void. However, as no fraud was shown, and no other reason advanced upon which the trial court could have entered judgment in favor of the appellants, this objection is also untenable. There must be either fraud or a lack of good faith, or some breach of trust shown in addition to the fact of interlocking directorates. In 14 C. J. 873, section 1332, the law relating to dealings between interlocking directorates is thus stated: "The fact that part or all of the stockholders of two corporations are the same does not have the effect of rendering the corporations legally identical. It does not make either corporation responsible for the contracts of the other or for the acts of its members as members of the other. Neither does it prevent the corporations from dealing with each other, although, where the same majority is in control of both corporations, the dealings of the corporations with each other will be subjected to a careful scrutiny and the rights of minority stockholders will be protected by the courts. However, it is held that the fact that the same persons constitute majority stockholders in each of two corporations, does not enlarge the jurisdiction of equity to interfere with the

management of one of these corporations in relation with the other, at the suit of a minority stockholder." Many authorities are cited in the footnotes in support of the text just quoted. (See, also, *Sausalito Bay Land Co.* v. *Sausalito Improvement Co.*, 166 Cal. 302 [136 Pac. 57].)

No reason having been shown why the judgment of the trial court should be reversed, it is hereby ordered that the same be, and it is hereby, affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 1, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 31, 1930.

All the Justices concurred.