[Civ. No. 7443. First Appellate District, Division Two.—November 10, 1930.]

FRANK H. BUCK, Appellant, v. TUXEDO LAND COMPANY (a Corporation) et al., Respondents.

454

Frederick W. McNulty, Goldman & Altman and Leland S. Fisher for Appellant.

Wright, Wright & Stetson and Randell Larson for Respondents.

BURROUGHS, J., *pro tem.*—This is an appeal from a judgment in favor of defendants in an action in equity wherein the plaintiff, a minority stockholder in the Tuxedo Land Company, seeks to enjoin a purchase by said company of all the properties of the Golden Valley Land Company, a corporation.

The offer to sell was authorized by the board of directors of the Golden Valley Land Company and unanimously ratified by its stockholders. The offer was then submitted to the Tuxedo Land Company and accepted by its board of directors on May 5, 1927. A permit was secured from the commissioner of corporations authorizing the Tuxedo Land Company to issue and sell the necessary stock called for by the agreement of sale. A special meeting of the stockholders of the Tuxedo Land Company was called for February 9, 1928, for the purpose of ratifying the proposed purchase. Appellant filed his complaint February 2, 1928, asking that the purported acceptance by the board of directors of the Tuxedo Land Company be declared null and void; that they be restrained from executing a deed or other conveyance; also that they be restrained from holding the proposed ratification meeting on February 9, 1928, or from taking any steps toward the completion of the proposed transaction.

Plaintiff alleges that the consideration is far in excess of the value of the properties purchased; that said vendor

company was at the time of sale insolvent, its liabilities being far in excess of its assets.

Plaintiff further alleges that he will suffer and sustain irreparable injury and damage. There is no allegation of fraud. A restraining order *pendente lite* was issued on February 8, 1928, providing, however, that the proposed meeting might be held as scheduled and that the stockholders might vote as they saw fit upon said proposed purchase, "but that the holding of said meeting shall not constitute a waiver on the part of plaintiff of its objection to the proposed purchase by the Tuxedo Land Company of the properties of the Golden Valley Land Company or of any of the other things complained of in the complaint of the plaintiff herein".

The stockholders' meeting was held as scheduled and the proposed purchase was ratified by an affirmative vote of 1550 shares out of a total of 1950 shares and opposed by the 385 shares represented by plaintiff. Fifteen shares were not voted.

The individual defendants, five in number, were the board of directors of both corporations, the purchasing company and the selling company. Following a trial on the merits, judgment was rendered for the defendants, and plaintiff appeals. Further facts will appear in the discussion of the findings assailed by appellant.

Appellant bases his appeal upon the contention that material findings of fact are not supported by the evidence and further upon a question of law, which for convenience we will give first consideration. For this purpose we are assuming that the findings of fact are sustained by the evidence.

Plaintiff stresses the fact of the interlocking directorates and has seized upon the language occurring in the opinion of the court in *O'Connor, etc.,* v. *Coosa F. Co.,* 95 Ala. 618 [36 Am. St. Rep. 251, 10 South. 290, 291], as follows: "Such transactions may be avoided by either company or at the instance of a stockholder in either company without regard to the question of advantage or detriment to either company."

We find no case in which the courts of California have followed this rigid rule, allowing a minority stockholder to avoid the action of the directors and majority of stockholders merely because of an interlocking directorate, with-

out showing injury, damage or fraud. The rule in California is correctly set out in California Jurisprudence, volume 6, section 449, page 1077, as follows: " . . . where one corporation deals with another and the same persons constitute all or a majority of the directorate of each company, *there being no* actual or intended fraud, the transaction is not void, but voidable only, and may be ratified by either party by conduct having that legal effect. Of course, such transactions may be avoided *for fraud,* by either company or at the instance of a stockholder in either company, *without regard to the question of advantage or detriment.*" (Italics ours.)

In *O'Connor* v. *Coosa, supra,* the references to the rights of stockholders cited by counsel are *dicta.* That action was a creditors' suit which failed because there was no proof of fraud in the transaction complained of. The right of a stockholder to prevent a voidable transaction was not involved in the case. However, the decision in reference to the voidability of a transaction involving an interlocking directorate contains the further statement, "The general rule is that such dealings are not absolutely void, but are voidable at the election of the respective corporations, or of the stockholders thereof. They become binding if acquiesced in by the corporations and their stockholders."

The *Sausalito Bay Land Co.* v. *Sausalito Imp. Co.,* 166 Cal. 302 [136 Pac. 57, 59] (cited by both appellant and respondents herein), is an action to quiet title to land which the plaintiff corporation had sold to the defendant corporation, and for which the defendant corporation had not fully paid. Defendant corporation filed a cross-complaint in which the fact of an interlocking directorate was set out. Defendant's main contention was that by reason of this fact, regardless of the absence of fraud or bad intent, the conduct of the directors constituted constructive fraud sufficient to justify a rescission at defendant's demand. Commenting on this phase of the case, the court says: "The rule established in this state is that where one corporation deals with another, and the same persons constituting the majority of the directorate of each company, control the deal, there being no actual or intended fraud, the transaction is not void but only voidable, and may be ratified by either party by conduct having that legal effect, and that it is binding

upon the party so ratifying it." And further: "The correct doctrine is well stated in *O'Connor, etc.,* v. *Coosa F. Co.,* 95 Ala. 618 [36 Am. St. Rep. 251, 10 South. 291], as follows: 'If the same persons as directors of two different companies represent both companies in a transaction in which their interests are opposed, such transaction may be avoided by either company, or at the instance of a stockholder in either company, without regard to the question of advantage or detriment to either company. Both the corporations are armed with the right to repudiate such a transaction, no matter how fair or open it may be shown to be. . . . The general rule is that such dealings are not absolutely void, but are voidable at the election of the respective corporations, or of the stockholders thereof. They become binding if acquiesced in by the corporations and their stockholders.' " The decision in the Sausalito case rested upon the fact found by the lower court and sustained by the appellate court, that all the defendants and cross-complainants by their conduct had ratified that original sale and the agreement, therefore, had become binding. The statement of the rule from the *O'Connor* v. *Coosa* case was made for its bearing upon the fact of ratification and not for the purpose that the appellant in the instant case has cited it.

We believe the general inference of this decision, as well as in the other California cases cited and relied upon by appellant, are in favor of the rule as above quoted from California Jurisprudence, *supra, San Diego, etc.,* v. *Pacific Beach Co.,* 112 Cal. 53 [33 L. R. A. 788, 44 Pac. 333]; *Pauly* v. *Pauly,* 107 Cal. 8 [48 Am. St. Rep. 98, 40 Pac. 29].

A case in point is that of *Roberts* v. *Prisk,* 103 Cal. App. 599 [284 Pac. 984, 987], where all the directors of the two companies were the same and minority directors and stockholders refusing to ratify were the plaintiffs. The fact of interlocking directorates is urged as a reason why the transaction should be held void. The court says: "There must be either fraud or a lack of good faith, or some breach of trust shown in addition to the fact of interlocking directorates". The court cites from 14 Corpus Juris, page 873, section 1332, as follows: " . . . the law relating to dealings between interlocking directorates is thus stated: 'The

fact that part or all of the stockholders of two corporations are the same does not have the effect of rendering the corporations legally identical. It does not make either corporation responsible for the contracts of the other or for the acts of its members as members of the other. Neither does it prevent the corporations from dealing with each, although, where the same majority is in control of both corporations, the dealings of the corporations with each other will be subjected to a careful scrutiny and the rights of minority stockholders will be protected by the courts. However, it is held that the fact that the same persons constitute majority stockholders in each of two corporations, does not enlarge the jurisdiction of equity to interfere with the management of one of these corporations in relation with the other, at the suit of a minority stockholder.' ''

From the foregoing we believe the rule in California is too well settled to require further discussion. A transaction between two corporations having common directors, which is not *ultra vires,* cannot be prevented or avoided by a minority stockholder, except he be able to prove actual or constructive fraud, injury or damage. In the instant case plaintiff alleges injury and damage. The court found against him and if the findings of the court are sustained by the evidence plaintiff's action must fail.

Appellant contends that the following findings of fact are not supported by the evidence: 1, 2, 4, 18, 19, 21, 22, 23 and 30.

Findings numbers 1 and 2 are to the effect that the defendant directors of the two land companies did not at any time hold a majority of the stock in either company. That they did not hold in excess of 581 shares in Tuxedo Land Company out of a total of 1950 shares; that they did not hold in excess of 331 shares in Golden Valley Land Company out of a total of 760 shares.

Plaintiff alleged in his complaint that the directors owned and held more than one-half of the total issued stock of Tuxedo Land Company (1950 shares), and that the same directors owned and held all the capital stock (760 shares) of the Golden Valley Land Company.

Plaintiff seeks to avoid these findings by a statement in his brief that "the majority of the stock in both concerns

is held by these directors and their wives and immediate families".

The findings complained of are responsive to the issues as framed by the pleadings, without detailing the evidence on this point it is sufficient to say there is no dispute as to the ownership of stock. The only evidence is that of two defendants to the effect that the directors hold in their own names in the proportion stated in the findings of the court. Enough stock is held by relatives and connections of these directors to make a majority of the stock owned by the directors and their relatives, the same evidence shows conclusively that these individual relatives each own the stock standing in their names and purchased it with their own separate money.

There were in the Tuxedo Company twenty stockholders, eleven of whom, holding 615 shares, are not shown to be in any way related to any of the directors. In the Golden Valley Land Company there were nine stockholders. It appears that but one stockholder, owning 117 shares, was not related or connected with the directors in any way. There were stockholders in the Tuxedo Land Company holding 885 shares who owned no stock in the Golden Valley Land Company.

The findings one and two are wholly responsive to the issues and are supported by the evidence. ▪ Findings numbers 18, 19, 21, 22, 23 and 30 are all concerned with the various allegations of the unsoundness of the business deal and the fairness or unfairness of the consideration and the disputed valuations of the properties to be transferred by the Golden Valley Company to the Tuxedo Land Company, and the contention of injury and damage to defendant corporation, Tuxedo Land Company, and in consequence to the plaintiff.

To discuss in detail the evidence relating to these findings would reveal a conflict in the evidence which has already been decided by the trial court and therefore is not subject to change by this court. Suffice it to say that after a careful examination of the record there is sufficient evidence to sustain each finding.

▪ Finding No. 4 recites that it had not been the policy of the Tuxedo Land Company to distribute to its stockholders all sums realized from the sale of its property or to

liquidate the company when all the property owned by it had been sold. On this subject two of the directors, Stetson and Oxnard, testified, "The Tuxedo Land Company, had, from sales of its land, accumulated considerable sums of money, the major portion of which had to be carried as the capital assets of the company. The reduction in the par value of the capital stock was accomplished in order to free some of these cash assets from the status of capital assets and to enable the board of directors of the Tuxedo Land Company to distribute the same and such future cash receipts as might seem proper in the form of dividends to the stockholders of the Tuxedo Land Company", and further, "The board of directors of the Tuxedo Land Company in accomplishing the reduction in the par value of its capital stock, did not take that action as a step preliminary to dissolution of the corporation or in an effort to wind up its affairs or conclude its activities."

The above finding is supported by the foregoing evidence.

Both appellant and respondents have given considerable space in argument as to the effect of the undisputed facts of ownership of stock in the two companies and to the contention by appellant that the action of the Tuxedo Land Company's directors was not properly, or at all, ratified by a majority of the stock. It is conceded that the plaintiff, who is a minority stockholder, did not at any time ratify the action of the directors.

There is no allegation and no evidence that the action of the directors of the Tuxedo Land Company was *ultra vires* or that it was such an action as required a ratification by the stockholders or that the directors had not the power or right as the business managers and representatives of the one land corporation to purchase the properties of another land corporation without an express ratification by the stockholders.

The undisputed facts of ratification or attempted ratification are as follows: The stockholders of the vendor corporation, Golden Valley Land Company, unanimously ratified the action of their board of directors. The directors of the Tuxedo Land Company accepted the offer of sale of the Golden Valley Land Company on May 5, 1927. The evidence shows that the stockholders of the Tuxedo Land Company were early advised of all the facts of the negotiations,

including the fact of the interlocking directorates and that certain stockholders were opposed to the purchase.

Between the time, January 19, 1928, when the notices of the stockholders' meeting for the purpose of ratification were sent out and the time of said meeting, February 9, 1928, at which meeting a majority of the stockholders expressly ratified the action of the directors, plaintiff filed his complaint. Therefore, plaintiff contends that the subsequent ratification by a majority of the stockholders should not be recognized by the court.

If a ratification by the stockholders is necessary to such action of their board of directors, then all the stockholders having been fully advised in the premises and a minority having contested, the majority stockholders by their conduct may be deemed to have acquiesced in the action of the board (*Sausalito Bay Land Co.* v. *Sausalito Imp. Co., supra*). But if, as contended by appellant, the board of directors owned and controlled a majority of the stock, then it follows a majority of the stock automatically ratified the action of the board of directors and plaintiff would still stand a minority stockholder attempting to avoid the action of the majority, which can be done only upon proof of fraud.

Neither party has shown any necessity for a ratification by the stockholders of an action by the directors, which is, in the absence of any allegation or proof to the contrary, presumed to have been within the scope of their business organization and within the power of the directors, as the business managers of the corporation, to conduct. (*Kennedy* v. *Savings Bank,* 101 Cal. 495 [40 Am. St. Rep. 69, 35 Pac. 1039], and *Roberts* v. *Prisk et al., supra.*)

The minority stockholder in this case is seeking to avoid the business judgment of its board of directors on the ground that the dealings are conducted by two corporations having identical directors.

"There must be either fraud or lack of good faith or some breach of trust shown in addition to the fact of interlocking directorates." (*Roberts et al.* v. *Prisk et al., supra.*)

The minority stockholder has made no showing which would warrant a court of equity to interfere with the management of the corporation business or disturb the judgment of the trial court.

Judgment affirmed.

Nourse, P. J., and Sturtevant, J., concurred.