**SKELLY v. DOCKWEILER et al.**

Civ. No. 7740–Y.

District Court, S. D. California,
Central Division.

Dec. 5, 1947.

12

Chandler & Wright and Howard W. Wright, all of Los Angeles, Cal., Martin, Logan, Finney & Stanton, Villard Martin, Garrett Logan, Doerner, Rinehart & Stuart, E. J. Doerner, Theodore Rinehart and Harold C. Stuart, all of Tulsa, Okl., for plaintiff.

David S. Hecht, of New York City, Gibson, Dunn & Crutcher, Norman S. Sterry, Henry F. Prince and Frederick H. Sturdy, all of Los Angeles, Cal., for defendants Pacific Western Oil Corporation and J. Paul Getty, individually and as trustee.

Farrand & Farrand, George E. Farrand, Ross C. Fisher, Dockweiler & Dockweiler, Henry I. Dockweiler and Frederick C. Dockweiler, all of Los Angeles, Cal., for defendants George Franklin Getty II, as trustee and Thomas A. J. Dockweiler, as trustee.

Wm. L. Hanaway, of New York City, Oliver O. Clark and Robert A. Smith, both of Los Angeles, Cal., for Sunray Oil Corporation.

George Rosier, of New York City, Loeb & Loeb and Herman Selvin, all of Los Angeles, Cal., for Investment Associates.

Dillon Anderson and John P. Bullington, both of Houston, Tex., and W. A. Caldecott, of Los Angeles, Cal., for John H. Blaffer.

YANKWICH, District Judge.

I. The Pleadings and Issues.

On November 6, 1947, Mission Corporation, a Nevada corporation, not a defendant herein, to be referred to as Mission, through its Board of Directors, issued a notice of a special meeting of stockholders to be held at the principal office of the corporation at Reno, Nevada, on December 6, 1947. The object of the meeting is, as stated in the Notice:

"1. To consider and vote upon an Agreement of Merger dated October 18, 1947, providing for the merger of Mission and Pacific Western Oil Corporation, a Delaware corporation, with and into Sunray Oil Corporation, a Delaware corporation, a copy of which Agreement of Merger is annexed as Exhibit A to the Proxy Statement being mailed to stockholders; and

"2. To transact such other business as may properly come before the meeting, or any adjournment or adjournments thereof."

William G. Skelly is a resident and citizen of Oklahoma. He is the owner of 14,000 shares of common capital stock of Mission of which 2,000 are of record in his name on the books and 12,000 are beneficially owned by him.

Thomas A. J. Dockweiler and George Franklin Getty II are Trustees under a Declaration of Trust dated December 31, 1934, wherein Sarah C. Getty is named as trustor and J. Paul Getty as original trustee. J. Paul Getty is testamentary trustee under the Decree of Partial Distribution of the Estate of Sarah C. Getty, deceased. These will be referred to as the Getty Interests.

Pacific Western Oil Corporation, a Delaware Corporation, to be referred to as Pacific, has issued and outstanding a total of 1,371,730 shares of common stock. Of this amount, the Getty Interests own 1,169,449 shares. Pacific holds 641,808 shares of stock of the Mission Corporation out of a total of 1,374,145 shares, the remainder of the stock being owned by some 30,000 shareholders other than Pacific.

Pacific is licensed to do business in California. It maintains its principal office in the City of Los Angeles and owns oil and gas producing property in this District.

By an amended Complaint, Skelly, on behalf of himself and other minority stockholders seeks to enjoin the defendant from causing the stock of Mission Corporation owned by Pacific to be voted in favor of the merger agreement at the stockholders' meeting, or at any adjournment of it. The objection against the merger is chiefly that the agreement dated October 18, 1947, to merge Pacific Mission and Sunray Oil Corporation, a Delaware corporation, to be referred to as Sunray, is made solely for the benefit of the Getty Interests. This for the reason that they must be paid cash at the rate of $68 per share, while the minority stockholders of Mission, including Skelly, if they approved the merger, would have to accept stock in the surviving corporation, Sunray, at a ratio of six shares of Sunray to one of Mission, to be sold on the open market subject to fluctuation, or, if they resort to their remedy under Nevada statute[1], their only alternative is to ask and receive the cash value of their Mission stock. Many general allegations of the oppressiveness of the contract to stockholders and the inevitability of its approval by Mission because of the stock control of the Getty Interests, are contained in the Complaint. In substance, however, the alleged disparity of treatment is as stated in the summary just given. The merger agreement need not be gone into. It provides for the merger of the Mission-Pacific into Sunray as a surviving corporation, the sale of the stock which Mission owns in Tidewater Associated Oil Company, namely, 1,345,593, at a price of $25 per share,

and of 577,854 shares of Tidewater owned by Pacific. The proceeds of the sale are to be applied to payment for the Pacific stock to be purchased by Sunray. Skelly has objected to the merger and was removed as President at the meeting of October 18, 1947, after which the merger was approved by a majority of the Directors.

The Complaint alleges that the matter in controversy exceeds $3,000. But it contains no averment of any actual damage or loss to be suffered by Skelly either through the approval of the merger at the called meeting, or the act of merger, although, at the hearing, losses running into several hundred thousand dollars were referred to, based chiefly upon speculation as to the lessened value of the converted stock after the completion of the merger.

Before me is an application for temporary injunction, a motion to dismiss the Complaint, a petition for intervention by Sunray and by Investment Associates, Inc., which own 600 shares of Mission. Answers have been filed by some of the defendants. The petitioners for intervention have proffered answers and hundreds of pages of affidavits and supporting documents were filed prior to, or introduced at, the hearing.

The defendants have moved to dismiss the Complaint upon three grounds: (1) that the Court has no jurisdiction; (2) that the Complaint does not state a claim, and (3) that this is not the proper forum for the action.

There is pending in the District Court for the District of Nevada, a Complaint brought by the same plaintiff against Mission, which, upon the same grounds, seeks to enjoin the holding of the meeting. In that action, Pacific has sought to intervene. The plaintiff has resisted the motion. In addition to this, he is asking this court to enjoin Sunray from seeking to appear in the Nevada court,—as he is also resisting their motion to appear here.

II. Majority Power and Minority Rights.

The application for temporary injunction and the motion to dismiss must be considered together as they were argued to-

---
[1] Section 41, General Corporation Law of Nevada, Comp.Laws § 1640.

gether. Rightly. For the Court's determination whether injunctive process should issue must, of necessity, involve the sufficiency of the Complaint.

The fundamental vice of the Complaint lies in the fact that the acts pleaded do not show either fraud or immediate, irreparable or any damage to the plaintiff.

 Jurisdiction of this court is invoked solely because of diversity of citizenship. This being so, the determination of the controversy is governed by California law.[2] And the courts of California have held consistently, beginning with the first case which arose in 1895 [3], that identity of directorates or control of corporations by the same individual or group of individuals does not invalidate agreements between them. The Supreme Court of California, in an early case has stated the problem in terse language which so fully answers the contention here made that such control, of necessity, taints the acts of the controlling interests with fraud, that we quote it here in full:[4] "Where two corporations, through their boards of directors, make a contract with each other, the directors who are common to both are not within the rigid rule of the cases which hold that one who acts in a fiduciary capacity cannot deal with himself in his individual capacity, and that any contract thus made will be declared void, without any examination into its fairness, or the benefits derived from it to the *cestui que trust*. Two corporations have the right, within the scope of their chartered powers, to deal with each other; and this right is certainly not destroyed or paralyzed by the fact that some, or a majority, of the directors are common to both. Of course, if such directors should wrongfully and willfully use their powers to the prejudice of one of the corporations, their action, if not acquiesced in, and if contested at the proper time, could be avoided, *as in any other case of actual fraud*. But such common directors owe the same fidelity to both corporations, and there is no presumption that they will deal unfairly with either. Therefore, their acts as such common directors are not void." (Emphasis added.)

 These cases have been followed consistently. And as the law now stands, while courts will scrutinize such agreements, they will not set them aside, *unless actual fraud is alleged and proved.*[5]

In this respect, the law accords with the decisions of the Supreme Court and of the various Circuits, including our own. And, while the Supreme Court has said that the "dominant or controlling stockholder or group of stockholders" are fiduciaries,[6] that statement, as applied in actual cases, has not been given any broader scope than the California rule. Through it, they have merely thrown the burden upon controlling stockholders or interlocking directors of proving the fairness of the transaction. But, just as the California courts, they have refused to set them aside unless actual fraud existed.[7] And the law of Nevada seems to accord with these rulings.[8]

---

[2] Angel v. Bullington, 1947, 330 U.S. 183, 191, 67 S.Ct. 657; and see Barrett v. Denver Tramway Corp., 1944, 3 Cir., 146 F.2d 701.

[3] Pauly v. Pauly, 1895, 107 Cal. 8, 40 P. 29, 48 Am.St.Rep. 98.

[4] San Diego, O. T. & P. B. R. Co. v. Pacific Beach Company, 1896, 112 Cal. 53, 58, 44 P. 333, 334, 33 L.R.A. 788.

[5] Sausalito Bay Land Co. v. Sausalito Improvement Co., 1913, 166 Cal. 302, 306, 136 P. 57; Manning v. App Consolidated Gold Mining Co., 1915, 171 Cal. 610, 616, 154 P. 301; Roberts v. Prisk, 1930, 103 Cal.App. 599, 284 P. 984; Buck v. Tuxedo Land Co., 1930, 109 Cal. App. 453, 458, 293 P. 122; Briggs v. Scripps, 1936, 13 Cal.App.2d 43, 56 P.2d 277.

[6] Pepper v. Litton, 1939, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281.

[7] Twin-Lick Oil Co. v. Marbury, 1875, 91 U.S. 587, 23 L.Ed. 328; Geddes v. Anaconda Copper Mining Co., 1921, 254 U.S. 590, 599, 600, 41 S.Ct. 209, 65 L. Ed. 425; Natural Gas Co. v. Slattery, 1937, 302 U.S. 300, 308, 58 S.Ct. 199, 82 L.Ed. 276; In re Lake Chelan Land Co., 9 Cir., 1919, 257 F. 497, 5 A.L.R. 557; Irving Bank-Columbia Trust Co. v. Stoddard, 1 Cir., 1923, 292 F. 815; Finn v. George T. Mickle Lumber Co., 9 Cir., 1930, 41 F.2d 676.

This is also the general rule. See, Note, Validity of Contracts Between Corporations as affected by Directors or Officers in Common, 114 A.L.R. 299.

[8] Smith v. Gray, 1926, 50 Nev. 56, 250 P. 369.

In the light of them, it is difficult to see how the outright acquisition of the stock owned by the Getty Interests by the new corporation for cash in order to obtain control of the new corporation, is so oppressive an act as to amount to actual or constructive fraud. We must look at realities. Control gives power, whether in a corporation or elsewhere. Equality of treatment does not mean that the owner of a controlling interest in a corporation shall be deprived, on the basis of an illusory ideal of pure equality, of the advantage which comes to him from such control, or to the buyer who seeks control of the corporation through outright purchase of his interest. And this is especially true when the minority interest is given stock which has a similar valuation, which is redeemable by the surviving corporation at the same rate as they paid to the controlling interests, and when the dissident stockholder, if he chooses not to accept the fruits of the merger, is given, by state law, a remedy which entitles him to receive the full value of his stock.[9] Our own Circuit Court of Appeals has held that, when such provision is made by state law, the remedy is adequate and the dissenting stockholders cannot invoke the equity powers of the federal courts to block a merger.[10] Rightly. Because, otherwise, a minority of stockholders could actually prevent a merger by insisting that, under no conditions, will they agree to either sell their stock or exchange it for stock in the merged corporation. It is significant that in this case, there is no allegation in the Complaint that the plaintiff and the other stockholders, in whose behalf he brings this action, are willing to dispose of their stock or to agree to a merger upon any conditions. In fact, I gathered the impression from the argument of counsel that Skelly and the dissident stockholders desire to retain this stock. The emphasis at the hearing upon the large dividend which the Mission stock earned warranted the impression that they seek to retain the stock by preventing the merger. It is to prevent such an attitude, which would make merger of corporations impossible, that state statutes provide for methods of compelling assent. And courts have declined to intervene except upon a showing of actual fraud. He who seeks the intervention of a court of equity must show that he has no plain, adequate and complete remedy at law cognizable in the federal courts.[11] And, as already appears, the remedy given by the Nevada statute would be enforceable, other jurisdictional requirements being satisfied, in the Federal District Court of Nevada. And that it is adequate and complete is obvious. For, if the test of distributive justice is Ulpian's famous "voluntas jus suum cuique tribuendi", a remedy which gives to the dissenting stockholder the "fair cash value of his shares as of the day before the vote on the agreement of merger" satisfies all the requirements of equity. For no one is entitled to receive more than the value of what he parts with in reorganization.

### III. No Damage Shown.

A complaint of this character must show damage both to satisfy the jurisdictional minimum prescribed by the Judicial Code[12] and to call for the intervention of the Chancellor. Nay, more. It is made the continuing duty of this court to inquire at all times into jurisdiction.[13]

A general allegation of damages in the statutory amount is not sufficient.[14] It is true that, in certain types of

---

[9] Section 41, General Corporation Law of Nevada.

[10] Beechwood Securities Corporation v. Associated Oil Co., 9 Cir., 1939, 104 F. 2d 537. And see, Henry W. Ballentine, Upsetting Mergers and Consolidations, 1939, 27 California Law Review, 645; Neblett v. Carpenter, 1938, 305 U.S. 297, 305, 59 S.Ct. 170, 83 L.Ed. 182.

[11] 28 U.S.C.A. § 384; Great Lakes Dredge & Dock Co. v. Huffman, 1913, 319 U.S. 293, 297, 63 S.Ct. 1070, 87 L. Ed. 1407; Hillsborough v. Cromwell, 1946, 326 U.S. 620, 622, 66 S.Ct. 445, 90

L.Ed. 358; Giovanni v. Camden Fire Insurance Ass'n, 1935, 296 U.S. 64, 69, 56 S.Ct. 1, 80 L.Ed. 47. See my opinion in Rieder v. Rogan, 1935, D.C.Cal., 12 F. Supp. 307, 317, 318.

[12] 28 U.S.C.A. § 41 (1).

[13] 28 U.S.C.A. § 80. Yankwich, Some Jurisdictional Pitfalls in Diversity Cases, 1942, 2 F.R.D. 388; Yankwich: Jurisdiction of Federal Courts, 1947, 6 F.R. D. 507.

[14] McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 190, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc. v.

class actions involving the right to do business, the jurisdictional amount may be arrived at by aggregating the value of the businesses of the corporation.[15] But, as already appears from the analysis which precedes, you cannot put your finger on any tangible showing of damage in the Complaint so far as the plaintiff is concerned. That tangibility cannot be supplied by adding up the detriments of other stockholders. For they, too, are intangible. In truth, what the Complaint alleges is, not facts which would flow from the exercise of the right of the defendants to vote their stock as they please, but fears of what the initial step might result in if the merger is effected. A court of equity cannot use its injunctive power to allay the fears of a litigant.[16] And that is about all that this Complaint sets forth. The plaintiff fears that if the stock is voted and the corporations are merged, the stock to be issued to him and others in the minority could not be sold on the open market at its value. And that assumption is based upon the fact that the sale of Tidewater stock by the surviving corporation to secure money to buy the Getty Interests and the floating of a bond issue might leave the minority stock in a subordinate position, with reduced value. But injunctive action is directed only against imminency. All that the directors have done at the present time is to submit an agreement of merger to the stockholders for approval. If such approval is secured, and the merger is completed, and the plaintiff and those in the same position are actually placed in a position where they cannot, under Nevada law,

secure the actual value of the stock which they now own, in case they do not accept the Sunray shares, or if they accept them, are forced to sell them at less than the basic prices to be paid the Getty Interests, detriment will result to them. *But not until then.* The facts which may cause the damages have not yet come into being. And a court of equity cannot, like some Aladdin, bring forth these unoccurred events in order to stay the legitimate action of a group of persons in voting the stock of a foreign corporation at a meeting to be held outside the jurisdiction of this Court.[17]

### IV. Pendency of Nevada Action.

The action pending in Nevada seeks to achieve the same result sought here, by asking that the Directors of Mission be prohibited from holding the meeting and from doing any further act in consummation of the merger.

It is a familiar doctrine of corporation law, recognized in California and Federal Jurisprudence, that courts will not exercise visitorial powers to interfere with the internal affairs of foreign corporations.[18] There is only one deviation from this rule, i. e., when corporate acts are about to be performed in a state other than the state of organization, its courts may interfere with them.[19] This is especially true when the property of the corporation is situated in the state and its business is carried on therein. But Mission, the stock of which we are asked to freeze in the hands of the defendants, in California, transacts no business in California. So, assuming the right of the plaintiff to institute the action,

---

Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183. See my opinion in Allen v. Clark, D.C., 1938, 22 F. Supp. 898.

[15] Gibbs v. Buck, 1939, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

[16] See: 28 Am.Jur., Injunctions, Sec. 29. See my opinion in Redlands Foothill Groves v. Jacobs, D.C.Cal.1940, 30 F. Supp. 995, 1000.

[17] It should be noted in this connection that, while the Complaint alleges that the merger was designed solely for the purpose of allowing the Getty Interests to sell their stock, these facts are denied by the Getty Interests and by Sunray. The affidavit of Clarence Wright shows that the purchase of the stock was the

sine qua non of the merger from their standpoint, as they would not be interested in effecting the merger unless it gave them control. And the affidavit of J. Paul Getty is to the effect that as early as March, 1947, they received offers from the Tidewater Association for their shares at the present price. He adds that, because of increase in recent oil values, if the present sale is not completed, he would ask for $75 per share in any new offer.

[18] Southern Sierras Power Co. v. Railroad Commission, 1928, 205 Cal. 479, 483, 271 P. 747, and cases in Note 21, infra.

[19] Sharp v. Big Jim Mines, 1940, 39 Cal.App.2d 435, 103 P.2d 430.

we may decline to entertain jurisdiction on either of two grounds: (a) by invoking the doctrine of forum non conveniens,[20] or (b) by applying the familiar rule that we will not exercise jurisdiction when another court having jurisdiction over the same matter has entertained it and can, in the pending litigation, achieve the result sought to be achieved here.[21] And that this can be done in Nevada is apparent from what precedes and from the prayer of the Complaint. If the Nevada court prohibits Mission from holding the meeting, and upon hearing, forbids the completion of the negotiations, any threat to the plaintiff flowing from any prospective vote at the meeting vanishes.

The temporary injunction by the Nevada court will make it impossible for these defendants to vote the stock. And should it become permanent, and a decree in favor of the plaintiff be entered, all controversies between the minority and the majority stockholders would be at an end.[22]

The preceding discussion may be summed up briefly in this manner:

The Complaint does not state a claim against the defendants within the jurisdiction of this court. The plaintiff has not shown that the prospective action of the defendants in voting their stock will result in damage to him or to his group measurable in an amount sufficient to satisfy the minimum jurisdictional requirement in diversity cases. Nor has the plaintiff shown that irreparable injury of a character to warrant the issuance of a temporary injunction will flow either from the voting of the stock or the subsequent merger. Assuming that damage will result, it is not immediate, but remote and flowing from contingencies which have not arisen and may never arise. The record before the court shows the pendency in the District of Nevada of another action brought by the same plaintiff against Mission, the stock of which is involved here, and in which the court by its judgment can achieve the same result. The plaintiff having invoked its jurisdiction, and the Court having entertained it, that forum is the appropriate forum for the determination of the controversy, and plaintiff should be limited to the relief obtainable in that court, which will settle all controversies between the majority and the minority stockholders of Mission.

The Order to Show Cause will, therefore, be discharged.

The application for temporary injunction enjoining the defendants from voting at the meeting of December 6, 1947, is denied.

The application of the plaintiff for an injunction to prevent Pacific from intervening in the Nevada action is also denied, and

The Complaint is dismissed.

While the conclusion reached makes it almost unnecessary to rule on the motions of Sunray and Investment Associates, Inc., to intervene in this cause, nevertheless, because I feel that they should participate in the proceedings which so vitally affect their interests, the motions will be granted, so that they may have standing before the court in further proceedings in this case.

Formal orders to be prepared by counsel for the defendants and intervenors, and findings of fact, as to the denial of a temporary injunction as required by Section 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and Local Rule 8.

[20] United States v. National City Lines, D.C.Cal., 1947, 7 F.R.D. 456; Robert Braucher, The Inconvenient Forum, 1947, 60 Harvard Law Review, 908, 926–927; Edward L. Barrett, Jr., Forum Non Conveniens, 1947, 35 California Law Review, 380, 399–402.

[21] Rogers v. Guaranty Trust Co., 1933, 288 U.S. 123. 130, 131, 53 S.Ct. 295. 77 L.Ed. 652, 89 A.L.R. 720; Cohen v. American Window Glass Co., 2 Cir., 1942, 126 F.2d 111; Weiss v. Routh, 2 Cir., 1945, 149 F.2d 193, 159 A.L.R. 658.

[22] While this opinion was in preparation, word reached me that on December 3, 1947, Judge Roger T. Foley of the District of Nevada, had made an order granting a preliminary injunction enjoining Mission from voting on the merger agreement and "from proceeding further with said merger." I do not know whether Judge Foley ruled on a motion to dismiss or whether he ruled on the sufficiency of the Complaint before him. But, regardless of any possible disagreement between us as to whether the plaintiff has an actionable claim, it is quite evident that plaintiff can obtain in the District Court of Nevada what he seeks here. Hence my decision to stand on my own conclusions in the matter cannot harm the plaintiff.